Bob L. Hanks, Property owner
c/o 1509 West Pepper Place
Mesa, Arizona 85201-7011
Phone: (480) 969-1904

_X_ FILED _____ LODGED
_____ RECEIVED _____ COPY

DEC 2 0 2021

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

BOB L. HANKS, )
)  CASE NO. **CV21-02174-PHX-JZB**
Plaintiff, )
)
)  COMPLAINT
vs. )  [ by Affidavit ]
)
MARICOPA COUNTY RECORDER'S OFFICE;)
)
CHRISTINA HARPER, Individually, and as )
)
Trustee for U.S. BANK TRUST N.A. as Trustee )
)
for LSF9 MASTER PARTICIPATION )
TRUST, BY CALIBER HOME LOANS, INC.; )
)
FIRST AMERICAN FINANCIAL )
CORPORATION dba FIRST AMERICAN TITLE )
INSURANCE COMPANY; )
)
BANK OF AMERICA, N.A.; )
)
UNDISCLOSED (I-XX), )
)
Defendants. )
_____ )

STATE OF ARIZONA )
)ss:
County of Maricopa )

PLAINTIFF, BOB L. HANKS, having been first duly sworn, and real owner of the subject property located at 4607 West Northview, Glendale, Arizona brings this verified complaint against MARICOPA COUNTY RECORDER'S OFFICE; CHRISTINA HARPER individually and as trustee for U.S. BANK TRUST, N.A., as Trustee for LSF9 MASTER PARTICIPATION TRUST, BY CALIBER HOME LOANS, INC. (one of multiple alleged "successors in interest"); FIRST AMERICAN FINANCIAL CORPORATION dba FIRST AMERICAN TITLE INSURANCE COMPANY; and BANK OF AMERICA, N.A.; Defendants herein, for egregious damages and criminal violations resulting in felony home theft, adversely affecting Plaintiff's real property in excess of $300,000.00 along with violations of Plaintiff's constitutional rights, Article V;

1

**Paragraph One**: This Complaint is about Defendant(s) committing a criminal misdemeanor act that was turned into felony Home Theft over 8 years after a loan was bankrupted, and in violation of the bankruptcy automatic stay that became a permanent stay pursuant to U.S. Bankruptcy Code Section, 11 US Code §524(a)(2) by Order of the Bankruptcy Court, which this Honorable Court cannot allow to be ignored, condoned, encouraged or supported. *Prima facie* recorded evidence supports Plaintiff's allegations that the "Affidavit of Scrivener's Error" and the "Deed of Trust" are invalid and in violation of Arizona Law(s), which Defendant Bank of America admits and agrees with Plaintiff in its secret Loan Comments;

## I.    JURISDICTION

2.      The transactions and events, which are subject matter of this complaint occurred within the County of Maricopa, State of Arizona, while subject property is located within Maricopa, County, State of Arizona with a common address of 4607 West Northview, Glendale, Arizona;

3.      Diversity exists as some Defendant entities are located in other states, under 28 U.S.C. §1332 and the amount of damages exceeds $75,000, exclusive of interest and costs.

## II.    THE PARTIES

4.      Plaintiff, Bob L. Hanks, (Plaintiff hereinafter) a disabled veteran citizen claims to be the real owner of the subject property, and currently resides in Maricopa County, State of Arizona, c/o 1509 West Pepper Place, Mesa, Arizona. Plaintiff paid property taxes, repaired the damages done by homeless trespassers who burned all cabinet doors, broke windows and screens and broke the back door, and Plaintiff replaced damaged carpets, plus paid utilities until obtaining care takers at a cost of $500.00 per month, who then repaired the leaking roof, replaced the broken garbage disposer, replaced the broken and leaking hot water tank and replaced the upstairs toilet and who kept homeless trespassers from destroying the subject property a second time – from February, 2019 through December, 2021, for 35 months, Cost: $17,500.00;

5.      Defendant MARICOPA COUNTY RECORDER'S OFFICE (Defendant MCRO hereinafter) is an entity, agency, or person for purposes of this Complaint, and is represented by the Maricopa County Attorney's Office at: 225 West Madison Street, Phoenix, Arizona 85003, where Defendant First fraudulently and criminally filed the Affidavit of Scrivener's Error (MCRO No. 2012-0033640), dated 1/17/2012 without the notarized signature of the Debtor authorizing or agreeing to modify the unsecured Loan Agreement by filing the document in violation of A.R.S. §33-421(C) and A.R.S. §33-420 in an evil plan, scheme or artifice to defraud Plaintiff;

6.      Defendant CHRISTINA HARPER individually (Defendant Harper hereinafter) and who identified herself as trustee for U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust, by Caliber Home Loans, Inc. (one of multiple "successors in interest", as persons, agents, entities and assigns, too numerous to identify individually), and is believed to be residing in Maricopa County, State of Arizona, whose office is: 2999 N. 44th Street Suite 625, Phoenix, AZ 85018 and who each acted in concert on an evil plan of civil conspiracy in a scheme or artifice to defraud and where the act of one is the act of all and who are collectively known as "Defendant Trusts" hereinafter;

7.     Defendant U.S. Bank Trust, N.A, (Defendant U.S. hereinafter) identified by Defendant Harper in the plan, scheme or artifice to defraud through a civil conspiracy as an agent, entity or person and is located at: U.S. Bank Trust, N.A., 300 East Delaware Avenue, 8th Floor, Wilmington, DE 19809;

8.     Defendant LSF9 Master Participation Trust, by Caliber Home Loans, Inc., (Defendant LSF9 hereinafter) identified by Defendant Harper in the plan, scheme or artifice to defraud through a civil conspiracy as an agent, entity or person and is located at: LSF9 Master Participation Trust, by Caliber Home Loans, Inc., P.O. Box 24610, Oklahoma City, OK 73124;

9.     Defendant FIRST AMERICAN FINANCIAL CORPORATION dba FIRST AMERICAN TITLE INSURANCE COMPANY, (Defendant "First" hereinafter) as persons, agents, entities and assigns, located at: First American Financial Corporation dba First American Title Insurance Company, 1 First American Way, Santa Ana, California 92707, whose agent (Jeff Murdock) wrongfully, illegally, fraudulently and criminally filed the Affidavit of Scrivener's Error (MCRO No. 2012-0033640), dated 1/17/2012 on behalf of Defendant First without the notarized signature of the Debtor in violation of A.R.S. §33-421(C) as an actor in the plan, scheme or artifice to defraud Plaintiff through a civil conspiracy; Defendant Bank of America agrees with Plaintiff;

10.     Defendant BANK OF AMERICA, N.A., (Defendant BofA hereinafter) as an agent, entity or person or assign is located at: Bank of America Corporate Center, 100 North Tryon Street, Charlotte, North Carolina 28255 joined in with the plan, scheme or artifice to defraud through a civil conspiracy, also denominated the Affidavit of Scrivener's Error and the Deed of Trust to be invalid in its secret, internal loan comments and notes, establishing knowledge and intent to defraud within the Defendants collectively;

11.     Defendants, UNDISCLOSED (I-XX) are persons, agents, entities or assigns, whose identities and locations are currently unknown who joined the evil plan, scheme or artifice to defraud through a civil conspiracy, that upon disclosure/ discovery, Plaintiff will seek Court's permission to amend the Complaint to include any other real party in interest for cause; For purposes of simplicity, all of the Defendants collectively together are referred to as "Defendant(s)" hereinafter;

### III.     THE PLAN

12.     The evil plan, scheme or artifice to defraud through a civil conspiracy, (the "Plan" hereinafter) involving all of the Defendants, acting in concert consisted of a way to illegally invalidate a bankrupted unsecured loan, ("collect on an unsecured loan") without a valid legal description on a faulty "Deed of Trust", after-the-fact by illegally filing a document to create a factitious "Hoax" "lien", pretending that an underlying "lien" existed, then waiting several years (8 years) to announce an illegal Trustee's Sale to steal Plaintiff's real property, under color of law, previously identified by the FBI in 2008 as an evolving scheme of felony home theft, essentially using a Class 1 Misdemeanor to commit a serious felony under color of law that would not be investigated or enforced by law enforcement. Defendants were successful in illegally stealing Plaintiff's property after an action was brought to stop the sale. That action never had a hearing, as Defendants kept moving the goal post, (selling the property, removing the lawsuit to Federal Court after defaulting in Superior Court) and amendments to the lawsuit were not allowed;

## IV. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### Constructive Notice of uncontested Facts supporting Complaint, judicially noticed:

13.     Constructive Notice of uncontested Facts and recorded documents (*prima facie* evidence) supporting this Complaint, and in compliance with *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976): What each Defendant did or did not do, judicially noticed: All Defendants conspired to deprive Plaintiff of his Constitutional right to the enjoyment of his property. All Defendants acted in concert in an evil plan, scheme and artifice to defraud Plaintiff based on a debtor's unsecured, unopposed bad "loan" that was bankrupted over eight (8) years prior on (06/24/2010), uncontested, which is *res judicata*, in an attempt to collect on that "debt" in violation of Federal Bankruptcy Codes/ laws, [U.S. Bankruptcy Code Section, 11 US Code §524(a)(2)], beyond statute of limitations, said subject property being previously abandoned by prior assigns;

14.     As to Defendant MCRO:  Allowed Defendant First's Agent to illegally file the Affidavit of Scrivener's Error (MCRO No. 2012-0033640), dated 1/17/2012 without the required notarized signature of the Debtor approving and agreeing to modify the Deed of Trust in violation of A.R.S. §33-421(C) in a scheme or artifice to defraud, (a Class 1 Misdemeanor); however, Defendant MCRO has a duty and responsibility to correct the public record by rescinding and declaring the filing illegal and the document to be declared invalid in an effective, appropriate recorded document after being bamboozled by Defendant First;

Defendant MCRO refused to appropriately rescind the illegally filed Affidavit of Scrivener's Error (MCRO No. 2012-0033640) as requested by Plaintiff in a letter dated 12/11/2021 ("Notice and Demand") sent by certified mail, Article No. 7019 0160 0000 1492 5830 to Maricopa County Attorney's Office, who represents Defendant MCRO.

Plaintiff does not seek monetary compensation from Defendant MCRO,

Plaintiff seeks performance from Defendant MCRO to rescind the illegally filed document and declare its invalidity and identify the filing as being a criminal act in an appropriately recorded document that prevents said illegally filed document from ever being used again, *ab initio*, from its filing date; Plaintiff seeks this Court's assistance to enter an Order specifically compelling Defendant MCRO to rescind the illegally filed Affidavit of Scrivener's Error (MCRO No. 2012-0033640) *ab initio*, from its filing date as if it never existed in the perpetual public record and to punish Defendant First appropriately and sufficiently in a manner that Defendant First would never do it again and set an example for others to prevent them from criminally filing documents to bamboozle Defendant MCRO, as the law is clear, and it is believed by Plaintiff this Court should follow the Rule of Law, rather than condone or encourage criminal acts to prevail;

15.     As to Defendant Harper:  Defendant Harper, acted in concert with the other Defendants in a scheme and artifice to defraud Plaintiff based on a debtor's unsecured, unopposed bad "loan" that was bankrupted over eight (8) years prior (06/24/2010), uncontested, which is *res judicata*, in violation of U.S. Bankruptcy Code Section, 11 U.S. Code §524(a)(2), automatic stay becoming permanent, previously abandoned by prior assigns, judicially noticed.

Defendant Harper relied on a fraudulently, illegally recorded illusory "Affidavit of Scrivener's Error" Hoax by Defendant First and did multiple other wrongdoings to harm Plaintiff

and Plaintiff's constitutionally acknowledged rights under color of law, including but not limited to holding an illegal Trustee's Sale and executing a transfer of ownership of property for which Defendant Harper or her accomplices had no legal interest (in opposition to what Recon Trust did as Recon Trust canceled its Trustee Sale as required by the Bankruptcy Court's order);

Plaintiff expects this Court to enforce the Bankruptcy Court's Discharge of Debtor Order;

Defendant Harper illegally or unlawfully recorded a "Trustee's Deed" with scienter at MCRO Number 2019-0155427, dated 03/06/2019 (after Plaintiff initiated a lawsuit to stop the sale that was never heard) which recording violated A.R.S. §33-420(A), A.R.S. §33-421(C) and U.S. Bankruptcy Code Section, 11 U.S. Code §524(a)(2) after holding an illusionary Trustee's Sale under color of law, effectively stealing the property under color of law, which is the trigger pull on the evil plan that egregiously harmed Plaintiff, judicially noticed;

Defendant Harper set forth the amount of actual damages in her illegally obtained Trustee's Deed at: $301,740.80, as of March, 2019; The property has increased in Actual value since March 6, 2019;

Defendant Harper was advised of her pending wrongdoing prior to her illusionary "Trustee's Sale" by Plaintiff;

Instead of canceling her Trustee Sale, (as Recon Trust did after the Bankruptcy Order) Defendant Harper proceeded to utilize the criminally filed Affidavit of Scrivener's Error (a Class 1 Misdemeanor) filed by Defendant First as the basis for her criminal acts individually (Felony Home theft) and signed documents as "Trustee" for Defendant U.S. as Trustee for Defendant LSF9 by Caliber Home Loans, Inc. in the commission of a felony home theft, for which no lawful equity existed – as opposed to how Recon Trust Company, N.A. voluntarily recorded a "Cancelation of Notice of Sale Arizona," to avoid violations of U.S. Bankruptcy Code Section, 11 U.S. Code §524(a)(2), where the automatic stay became permanent, judicially noticed;

By doing so, Defendant Harper established some of the actors who acted in concert, one with another to execute an evil plan, scheme or artifice to defraud (and steal) Plaintiff's property under color of law with extreme and outrageous malice, knowledge and intent;

What Defendant Harper did in selling Plaintiff's property was wrongful, without legal authority, and done deliberately with bad intent, egregious malice, knowledge of the wrongdoing, without regard to the consequences and damages done to Plaintiff under color of law in concert with the other Defendant(s); As such, Defendant Harper's and her co-conspirators' acts of felony home theft are extreme and outrageous;

16. As to Defendant U.S.: Defendant U.S., acted in concert with Defendant Harper and the other Defendants in a scheme and artifice to defraud Plaintiff based on a debtor's unsecured, unopposed _bad_ "loan" that was bankrupted over eight (8) years prior (06/24/2010), uncontested, _res judicata_, in violation of U.S. Bankruptcy Code Section, 11 U.S. Code §524(a)(2), where the automatic stay became permanent, previously abandoned by prior assigns, judicially noticed.

17. As to Defendant LSF9: Defendant LSF9, acted in concert with Defendant Harper, Defendant U.S. and the other Defendants in a scheme and artifice to defraud Plaintiff based on a

debtor's unsecured, unopposed bad "loan" that was bankrupted over eight (8) years prior (06/24/2010), uncontested, *res judicata*, in violation of U.S. Bankruptcy Code Section, 11 U.S. Code §524(a)(2), where the automatic stay became permanent, beyond statute of limitations, previously abandoned by prior assigns, judicially noticed.

18.    As to Defendant First: Defendant First, acted in concert with the other Defendants in a scheme and artifice to defraud Plaintiff based on a debtor's unsecured, unopposed **bad** "loan" that was bankrupted over eight (8) years prior (06/24/2010), uncontested, *res judicata*, in violation of U.S. Bankruptcy Code Section, 11 U.S. Code §524(a)(2), where the automatic stay became permanent, having been previously abandoned by prior assigns, judicially noticed.

Defendant First knowingly, with scienter criminally, illegally and fraudulently, recorded an illusory "Affidavit of Scrivener's Error" (by Jeff Murdock, Agent for Defendant First) with Defendant MCRO (a Class 1 Misdemeanor) establishing the wrongful recorded acts in concert with the other Defendants in a plan (scheme or artifice under color of law) to defraud Plaintiff out of his property (identified as evolving felony home theft by the FBI in 2008) and violating Plaintiff's constitutional rights to enjoyment of Plaintiff's property, Amendment Article V;

The invalid "Affidavit of Scrivener's Error" could not and did not create a (false, Hoax) 2 years after-the-fact of bankruptcy of the **bad** loan, which became *res judicata*;

19.    As to Defendant BofA: Defendant BofA, acted in concert with the other Defendants in a scheme and artifice to defraud Plaintiff based on a debtor's unsecured, unopposed **bad** "loan" that was bankrupted over eight (8) years prior (06/24/2010), uncontested, *res judicata*, in violation of U.S. Bankruptcy Code Section, 11 U.S. Code §524(a)(2), abandoned by prior assigns, judicially noticed.

Defendant BofA's secret "Bank of America Loan Comments" indicate that both the "Affidavit of Scrivener's Error" and the "Deed of Trust" were defective, and invalid and attempted to get others to make them valid in a 75 page document over multiple months, without success. This illegally filed document shows extreme and outrageous knowledge and intent the Defendants acted in concert one with another to defraud the eventual owner of the real property, Plaintiff herein;

Plaintiff and Defendant BofA are in agreement that both the "Affidavit of Scrivener's Error" and the "Deed of Trust" are defective, and invalid, as stated in BofA's secret Loan Comments;

Defendant BofA's representative Agent, (Dennis L. "Cody" Shofler), who wrote the Deed of Trust, created a "Bad" Loan, which was among those other Bad Loans that Defendant BofA used to qualify for and obtain the government's TARP bail out of $45 **B**ILLION and Defendant BofA suffered no damage for its Bad Loan;

It is believed and therefore alleged that Defendant BofA (acted wrongfully with greed) applied for and received a second full payment from Defendant First in the form of Mortgage Insurance paid for by Debtor prior to his Bankruptcy;

Defendant BofA and its multiple successors, agents and assigns ("Defendants" herein) had no valid beneficial interest, no valid security interest, no valid lien or other valid property interest

to transfer in its unsecured <u>bad</u> loan that was bankrupted in Case No. 2:10-bk-03123-RJH, involving a previous owner (Debtor) who transferred the subject property to Plaintiff;

All of the Defendants are culpable in execution of their evil plan to defraud Plaintiff (eventual owner of the Property) from his ownership by use of a illusionary phantom Hoax that never existed, as none of the Defendants have any legal interest in the subject property;

Plaintiff is entitled to an award for the sum of not less than one thousand dollars, or for treble actual damages, whichever is greater, plus reasonable attorney fees and **costs** as a matter of law, A.R.S. §33-420, *et. al.*, judicially noticed;

Actual damages (of the property only, at the time February, 2019) were established by Defendant Harper in her Trustee Deed to be: $301,740.80 or 3 times Actual damages equals $905,222.40 plus reasonable attorney fees and **costs**;  **[EX. "I"];**

Plaintiff is entitled to the return of his property or the current value thereof with a quiet title;

Plaintiff believes and therefore alleges that he is entitled to an award of Compensatory damages in the amount of $301,740.80 in addition to the punitive damages above, or the current value of the property as Actual damages, if greater;

20.     As a result of *prima facie* recorded documents establishing the allegations of Plaintiff, Summary judgment or Declaratory judgment favoring Plaintiff is therefore appropriate, as Plaintiff requests a findings of fact, conclusions of law and an appropriate Judgment thereon pursuant to Rule 52(A) requested prior to trial, judicially noticed;

21.     None of the creditors or their successors at the time of the Bankruptcy, (Defendant BofA or Deutsche Bank Trust Company Americas) ever objected to the Discharge of Debtor's debts, Case No. 2:10-bk-03123-RJH, dated 06/24/2010, for Debtor **[EX. A]**  related to the $238,786.00 faulty <u>unsecured</u> loan for BofA or ever requested a stay in a timely manner;

22.     The Discharge became *res judicata* 30 days after 06/24/2010, or certainly by 05/30/2011, as shown by the "Trustee's Report of No Objection" which was filed on 04/27/11, (BK Doc 62), **[EX. B]**;

23.     The subject property was abandoned by its creditors (its unsecured <u>bad</u> loan of $238,786.00 having been previously fully paid from TARP's grant of $45 Billion for <u>bad loans</u>, after 10/01/2008 and the property was returned to the Debtor by the Bankruptcy Trustee 2 years later;

24.     The City of Glendale issued Citations and fined the "<u>owner of the property</u>", (the Debtor) for unsightly and excessive weed growth, and fees for extermination of killer bees infesting the walls, (which posed extreme fatal danger to the public in general) giving Notice at Debtor's new rented address from a water billing, alerting Debtor that he was the owner, and liable for injury or death of anyone of the public near <u>his property</u>, without insurance;

25.     Deutches Bank, a successor creditor of Bank of America, at the time of the Bankruptcy through Recon Trust Company, N.A. sent a notice to the vacant address, (which

Debtor never received) cancelling their Notice of Trustee's Sale (foreclosure), returning the property to the "owner" at the property's address, and abandoned the property, MCRO Number 20130055578 Dated 2013-01-17 **[EX. C]**;

     26.    Deutches Bank or its successor in interest had constructively abandoned the property by:
a)    not taking possession of the property,
b)    not changing locks,
c)    not paying the property taxes, [records show Ameron paid $22,468.72]
d)    not paying property insurance,
e)    not repairing roof hail damage (covered by Debtor's or its own insurance),
f)    not caring for the property (invaded by homeless persons),
g)    not exterminating the infestation of killer bees - a life threatening responsibility,
h)    not removing weeds and unsightly over growth - Glendale Code violation,
i)    not paying City of Glendale fines, and other things,
j)    canceling the first Notice of Trustee's Sale (foreclosure), **[EX. C]**;

     27.    The City of Glendale Citations, (through mail arriving at Debtor's new rented address) forced Debtor to take possession, make repairs caused by homeless trespassers, pay delinquent taxes, secure bee entry holes, replace all broken screens, replace all cabinet doors that trespassers burnt to keep warm, repair dog damage, replace damaged carpets, obtain insurance and other things, while the "Trustee's Final Report," (BK Doc 57), dated 03/29/2011, P3, col 4 states the personal residence was "abandoned", as shown in **[EX. D]**;

     28.    Two years after the Discharge became final, (in 2012) Defendant First illegally filed an invalid and fatally flawed "Affidavit of Scrivener's Error" (MCRO No. 2012-0033640), dated 1/17/2012, **[EX. E]**, in violation of A.R.S. §33-420(A), as the illegally filed Invalid document did not contain a notarized signature of the debtor acknowledging or authorizing the filing or recording of retroactive changes to the Deed of Trust, as required by law, A.R.S. §33-421(C);

     29.    The invalid "Scrivener's Error" was constructively and actually intended to be a retroactive "modification" of the contract, after the fact, (not an "error" correction), and which Scrivener's Error constructively states, and tacitly admits the Deed of Trust was an unsecured bad loan violating A.R.S. §33-802(A) in paragraph 4: **(i.e. "4. ... The legal description was omitted.") [EX. E]**, (referring to Deed of Trust); providing strict recorded *prima facie* evidence the creditor, successors and Defendants had collective knowledge and intent among themselves, acting in concert one with another in secret, with scienter and malice, in an evil plan of civil conspiracy to intentionally defraud or constructively defraud the Debtor and subsequently Plaintiff;

    *Westgate v. Phillip Richardson Co., Inc.*, 621 S.E. 2nd 114, clearly discusses what constitutes a scrivener's error and concludes that a party's inattention to detail even where the parties' intent was not fully reflected cannot be attributed to an error of the scrivener;

Each of the co-conspirators is jointly and severally liable for wrongful damages caused by every act of the other conspirators, as the act of one is the act of all;

     30.    Debtor's Lawyer, Arthur Allsworth, (now deceased) advised debtor he was the owner of the property and advised debtor to move back into his residence, and the debtor did so,

using his key, as Defendant BofA / Deutsche Bank Trust Company Americas had abandoned the property and had not changed the locks;

31.    Arthur Allsworth arranged exchange of the severely damaged property for a $95,000.00 judgment against Debtor, Case No. CV2012-090217, eventually transferring ownership of the property to Plaintiff;

32.    Maricopa County Assessor's Office assessed an increasing full cash value of the property in 2015 at $94,500, and limited value at $54,863;

33.    Recon Trust Company, N.A. voluntarily recorded a "Cancelation of Notice of Sale Arizona," MCRO Number 20130055578 Dated 2013-01-17, **[EX. C]**, which stated:

"RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
2380 Performance Dr, TX2-984-04-07
Richardson, TX 75082 …

WHEN RECORDED MAIL TO:
        **Owner of Record**
        4607 WEST NORTHVIEW AVENUE
        GLENDALE, AZ 85301"        **[Emphasis added]** judicially noticed;

Confirming the property was abandoned and returned to the debtor by strict recorded proof, judicially noticed, Rules of Evidence; It is believed and therefore alleged Defendant First paid Defendant BofA for its fatally flawed Deed of Trust, and wanted to re-coup its losses by committing a fraud by illegally filing invalid and fatally flawed "Affidavit of Scrivener's Error" against Debtor which eventually damaged Plaintiff under color of law;

34.    On 06/02/2014, Defendant BofA, acting through an off-shore Frederiksted, Virgin Islands 00820 entity transferred its pretended beneficial interest, (none existed or remained after bankruptcy of its unsecured bad loan, or after satisfied $238,786.00 bad loan on the property was paid by TARP's $45 Billion and 2nd full payment Title/ Mortgage Insurance from Defendant First) to Defendant BofA 2 years after filing as part of the evil plan to obfuscate and confuse; **[EX. F]**

35.    Defendant BofA, had no valid beneficial interest or valid Lien or valid security interest or any other interest to transfer or assign in a bad loan paid for by TARP's $45 Billion and a second full payment from Defendant First from Title / Mortgage insurance;

36.    Defendant BofA's 75 pages of "Loan Comments", **[EX. G]**, Bates CT01159; CT01160, and CT01161, (Pages 1, 2 and 3 of 75 Pages) and repeated throughout the 75 pages indicated that BofA knew that both the Deed of Trust and the Scrivener's Error were fatally flawed and that the debtor was not to be notified, judicially noticed (Rules of Evidence) and by constructive and actual Notice;

37.    TARP, acting through the Department of Justice Loan Modification Evaluation program paid Defendant BofA in full for its lien on the property of $238,786.00 from its first $25 Billion (or second $20 Billion) Federal Government Bank Bailout for the fatally flawed unsecured

bad "Loan" on or after 10/01/2008, (the information was not fully disclosed to Debtor while being secretly withheld from the Debtor, and never disclosed to Plaintiff):

> "Loan is eligible for Department of Justice Loan Modification Evaluation Please do not contact the operator of this NBK, this is an auto note << Auto Doc Roboto >>"  [CT01160] **[EX. G]**

> [judicially noticed of prima facie evidence – it was a "satisfied" bad loan which paid off the alleged "lien" on the property to Defendants, prior to bankruptcy]

Research show the culpability of Defendant BofA and its associates:

> https://www.reuters.com/article/us-banks/bank-of-america-gets-big-government-bailout-idUSTRE50F1Q720090116:

> "The bailout makes Bank of America the biggest recipient of taxpayer money next to Citigroup as the government pours cash into the nation's banks to plug holes left by **bad loans**. The worst housing crisis since the Great Depression and the worst recession in many years have hammered U.S. banks. The capital (another $20 billion) is on top of $25 billion that Bank of America previously got from the Treasury Department's Troubled Asset Relief Program (TARP)"
> **[Emphasis added]**

And:

https://www.corp-research.org/bank-of-america

> "Bank of America has become one of the main symbols of the excesses that brought about the financial meltdown of 2008 and the ensuing economic troubles. BofA was culpable both through its own actions and those of two troubled companies it acquired in 2008: Countrywide Financial and Merrill Lynch. <u>Countrywide initiated many of the predatory mortgages that were then bundled by the likes of Merrill into securities that turned out to be toxic.</u> Those entities ended up costing BofA vast amounts, including a 2014 Justice Department settlement with a price tag of nearly $17 billion."   [Emphasis added]

And:

https://www.reuters.com/article/us-banks-idUSTRE50F1Q720090116

> "WASHINGTON/NEW YORK (Reuters) - Bank of America Corp was rescued by the U.S. government on Friday through a $20 billion bailout and a guarantee for almost $100 billion of potential losses on toxic assets to cushion the blow from a deteriorating balance sheet at Merrill Lynch & Co, its recently acquired brokerage.

> The bailout makes Bank of America the biggest recipient of taxpayer money next to Citigroup as the government pours cash into the nation's banks to <u>plug holes left by bad loans</u>. The worst housing crisis since the Great Depression and the worst recession in many years have hammered U.S. banks.

> The capital is on top of $25 billion that Bank of America previously got from the Treasury Department's Troubled Asset Relief Program (TARP) in October and is the latest indication

that authorities are still struggling to come to grips with the financial crisis that began about 18 months ago." [**Emphasis added**]

And:

Why Bank of America is Hated:  https://www.youtube.com/watch?v=yOoELjOY654

38.     Defendant BofA provided strict recorded proof and evidence from Bank of America's secret "Loan Comments", **[EX. G]**, and Defendant First paid Defendant BofA a second full payment from its Title/ Mortgage Insurance, then illegally bamboozled Defendant MCRO into accepting and illegally filed the "Affidavit of Scrivener's Error", **[EX. E]**, after paying BofA in full (second full payment) for its **bad loan** on the property ($238,786.00) with full knowledge, intent with scienter, knowing the Document was invalid, in 2012, two years after-the-fact of Debtor's bankruptcy on 6/24/2010, for which severe sanctions are warranted;

39.     Defendant's reliance on the "Affidavit of Scrivener's Error", **[EX. E]**, is extreme and outrageous, wrongful, steeped in fraud and constructive fraud, intended to misdirect, obfuscate, disguise, or deceive the Court, violates A.R.S. §33-420, & A.R.S. §33-421(C) as co-conspirators continued down their evil path of an evil plan, with no regard for the harm, damages and depriving satisfaction of ownership they caused to others and Plaintiff by felony theft of subject property under color of law and violations of the Bankruptcy Court's Order, **[EX. A]**;

40.     The evidence from 75 pages of <u>secret</u> "Bank of America Loan Comments", **[EX. G]**, also indicated the Deed of Trust, recorded at MCRO No. 2006-0921500, dated 06/07/2006, **[EX. H]**, first 3 pages of 21 pages, (other pages are available at MCRO) was fatally flawed and invalid as analyzed by Defendant BofA's authors of the concealed secret Notes **[EX. G]** acknowledge, judicially noticed;

41.     This <u>secret</u> evidence from Defendant BofA also stated in effect to **not** notify the debtor to prevent full disclosure of adverse facts in furtherance of the evil plan and civil conspiracy; indicating knowledge, and intent to deceive with scienter;

42.     The "Deed of Trust" in this case, (MCRO No. 2006-0921500, dated 06/07/2006), **[EX.H]**, does not contain a property's legal description (Page 3 or attached elsewhere), in violation of A.R.S. §33-802(A), which requires and mandates that a Deed of Trust **shall** contain a property's legal description, making this Deed of Trust a fatally flawed bad "Loan" not secured by any property for which no valid Lien on the property ever existed;

43.     Neither a "mailing address," "notice" or "constructive notice" is included in the extensively specific wording of A.R.S. §33-802(A), (i.e. that which is not included is excluded) to replace required and mandated specifically written property's "legal description," nor was it the intent of the legislature to include a "mailing address" (in sub-section "B") or other "non-specific" things as a replacement for a property's legal description, while use of the word "<u>shall</u>" is mandatory on the judiciary to enforce the **Rule of Law**, and Laws of the State of Arizona, specifically A.R.S. §33-802(A), A.R.S. §33-420, & A.R.S. §33-421(C), for which the judiciary and Courts are bound thereby, judicially noticed;

44.     A.R.S. §33-802(A)(1) states in pertinent part:
"A.     In deeds of trust the <u>legal description</u> of trust property **shall**

be given by one of the following methods:

    1.     By the use of lot, block, tract or parcel **as set forth within a recorded subdivision plat**. ...";

[**Emphasis added**], First of 6 specific sub-sections, judicially noticed,

45.    The Arizona legislature never intended for a "mailing address" [set forth in Sub-Section ("B")] to replace a property's "legal description," [in Section ("A")] since it was not included by the legislature in A.R.S. §33-802(A), a "mailing address" and all other things not included are excluded:

"One of the so-called maxims of statutory interpretation is *expressio unius est exclusio alterius*: to express one thing is to exclude another. "The maxim reflects a form of reasoning that is widespread and important in interpretation ... the a *contrario* argument ... negative implication ... implied exclusion ...

"An implied exclusion argument lies whenever there is reason to believe that if the legislature had meant to include a particular thing within the ambit of its legislation, it would have referred to that thing expressly. Because of this expectation, the legislature's failure to mention the thing becomes grounds for inferring that it was deliberately excluded. Although there is no express exclusion, **exclusion is implied**."
    [**Emphasis added**]

Source: http://www.duhaime.org/LegalDictionary/E/ExpressioUniusEstExclusioAlterius.aspx

46.    The "Deed of Trust" in this case, without a property's "legal description" simply becomes evidence of a bad loan, **unsecured** by any property or Lien on property, and the **unsecured "Bad" loan** of $238,786.00 was discharged in bankruptcy and uncontested, the Bankruptcy Court's Discharge Order being deemed *res judicata*, and is without objection;

47.    Defendant BofA's Lien on the property was compensated in full by the "famous" Obama "Bank Bailout" of faulty or **"bad" loans**, ("TARP"), having received funds from the FIRST $25 multi-Billions in "bail out" money, (or second $20 Billion) on or after 10/01/2008 as a part of Department of Justice Loan Modification Evaluation eligibility through its Capital Purchase Program, as shown by strict proof, judicially noticed, Rules of Evidence:

Source: https://www.reuters.com/article/us-banks/bank-of-america-gets-big-government-bailout-idUSTRE50F1Q720090116

48.    It is believed, and therefore alleged that Defendant BofA was compensated in full a second time by Defendant First's available Title/ Mortgage Insurance, $238,786.00 for its badly written invalid Deed of Trust, without full disclosure, as said insurance was paid for by Debtor, prior to his bankruptcy;

49.    State Courts lack jurisdiction to overturn federal court decisions: *Milke v. Ryan*, 711 F.3rd 998 (9th Cir., 2013) which cited the principle that state courts should not unreasonably apply or misinterpret clearly established Federal Law; See also, *Sternberg v, Johnston*, 595 F.3d 937 (2010);

50.    Since the bad loan on the property was completely and fully paid (twice), Defendants had a duty and obligation of good faith to fully disclose such facts to Debtor and to Plaintiff and to record a "**full release and satisfaction of Lien on the property**" document with the Maricopa County Recorder's Office for **$15.00**, but instead embarked on an evil plan over years to deprive the subsequent owner, (Plaintiff) of the property in a malicious civil conspiracy to obfuscate, deceive and defraud through wrongful abuse of process, by alleging Debtor was late paying his monthly mortgage payment more than SIX (6) years later, when no valid Mortgage exists after Debtor's bankruptcy Discharge;

51.    As a result, Defendant BofA or other Defendants had no valid beneficial interest, no valid security interest, no valid Lien interest or any other interest to transfer or to assign the property to another entity, which required Defendant BofA to file a "full release and satisfaction of Lien on the property" at MCRO by contract; however Defendant BofA did not do so and should be required to do so by the Court as a contract obligation or otherwise;

52.    It is believed and therefor alleged Defendant BofA had a duty and obligation to fully disclose and to record a "full release and satisfaction of Lien on the property" after obtaining payment from TARP's $45 Billion or from the second full payment of $238,786.00 for its faulty bad loan on the property from Defendant First's Title/ Mortgage Insurance;

53.    Defendant BofA acting in concert with all of the other Defendants failed and refused to fully disclose adverse information or to release its alleged Lien on the property and instead embarked on a fraudulent course of action in concert with multiple other Defendants to deceive, conceal and abuse the legal system to obtain unjust enrichment of twice $238,786.00 for its TARP satisfied bad loan on the property while Defendant Harper and other co-conspirators attempted to (and illegally) successfully foreclosed on the property under color of law with knowledge, intent and scienter, extreme and outrageous malice and obfuscation, as part of conspirator's evil plan to steal Plaintiff's property;

54.    Plaintiff had a reasonable right and expectation to rely on Defendant BofA's good faith, integrity and former reputation as a Bank to fully disclose its payment received for the property's bad loan from the $45 Billion and second payment received for the property's bad loan from Defendant First's Title / Mortgage Insurance, which required filing of a "full release and satisfaction of Lien on the property" along with the Court's enforcement of the Rule of Law, A.R.S. §33-802(A), A.R.S. §33-420, & A.R.S. §33-421(C) and did so rely to Plaintiff's detriment resulting in extensive extreme and outrageous expenses and other damages for many years and continuing damages into the future in the event Defendants are allowed to take the property as a **third** unjust enrichment;

55.    Plaintiff gave good faith constructive and actual notice to Defendant Harper and others of their violations of A.R.S. §33-802(A), A.R.S. §33-420, and A.R.S. §33-421(C), the invalidity of the Deed of Trust and Affidavit of Scrivener's Error that tacitly admitted the Deed of Trust was in violation of A.R.S. §33-802(A), and that the Scrivener's Error did not have the signature of the Debtor unlawfully filed in violation of A.R.S. §33-420, & A.R.S. §33-421(C), which gave legally sufficient assurance, and actual knowledge of the matter had been conveyed to the Defendants; however, Defendant Harper and her co-conspirators failed and refused to respond or acknowledge Defendant's violations and ignored Plaintiff's actual and constructive notice;

## V.    CAUSES OF ACTION FOR WHICH RELIEF CAN BE GRANTED:

### FIRST CAUSE OF ACTION - FRAUD

56.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs and one through 55 as though fully alleged and set forth herein;

57.    Defendant BofA and its continuing multiple agents, successors, assigns, as co-conspirators (Defendants herein) made numerous false representations and concealed material facts to induce the owner of the property and subsequently Plaintiff that Defendants had transferred a "pretended" interest upon which Defendants could and did foreclose upon, under color of law, by first committing a Class 1 Misdemeanor, (illegally filing an invalid Affidavit of Scribner's Error, **Ex. E**), then turning the incident into a felony theft of the subject property to the detriment of Plaintiff, (selling Plaintiff's property at a Trustee's Sale, **Ex. "I"**);

58.    That at the time Plaintiff became the owner as explained by Real Estate Attorney, Arthur Allsworth (now deceased) the seller (Debtor) and Plaintiff both believed the property was free and clear of all Liens and encumbrances, as Recon Trust had cancelled the first Trustee Sale, returned the recorded document to the "owner of record" at the property address and had abandoned the property, **(Ex. C)**. Conversely the Defendants had full knowledge that by failing to fully disclose the faulty Deed of Trust and invalid Affidavit of Scribner's Error that was criminally filed by Defendant First, TARP pay-off and Defendant First's Title/ Mortgage Insurance second full pay-off occurring before Debtor's Bankruptcy, that Defendants could bring a second Notice of Foreclosure, and then a third Notice of Foreclosure to bamboozle Defendant MCRO and the Court and Plaintiff in their evil plan;

59.    *Prima Facie* Recorded Evidence includes without limit the following:

a)    Defendant First admitted knowledge that the Affidavit of Scrivener's Error proved the Deed of Trust violated A.R.S. §33-802(A) in Paragraph 4, while Defendants failed to obtain Debtor's authorizing signature in violation of A.R.S. §33-420, and Defendant First illegally filed the document knowing it was in violation of A.R.S. §33-421(C), **[EX. E]**

b)    Defendant BofA concealed the TARP "insignificant" Pay-off of $238,786.00 out of the $45 Billion for the **bad loan** on the property;

c)    Defendant BofA concealed Defendant First's Title/ Mortgage second Pay-off of $238,786.00 for the bad loan on the subject property;

d)    Defendant BofA's secret, concealed Loan Comments, **[EX. G]** (not allowed for disclosure to Debtor) repeatedly stated throughout 75 pages over several months the Deed of Trust and Affidavit of Scrivener's Error were fatally flawed;

60.    Defendants knew or should have known that had the truth been fully disclosed, Debtor or Plaintiff would have demanded that Defendants file a document that satisfied the Lien and cleared the Title ("full release and satisfaction of Lien on the property") **for $15.00** or less;

61. Defendants, acting in concert intended to induce Plaintiff based on these wrongful representations, concealments and improper Disclosures along with the criminal filing of the Affidavit of Scrivener's Error in their evil Plan, backed by $45 Billion, with access to the $700 Billion set aside by President Obama for "Banks to BIG to fail";

62. Plaintiff's reliance upon the Defendant's wrongful misrepresentations was reasonable and Plaintiff did so rely to his detriment;

63. Defendants were aware of the misrepresentations and profited from them;

64. This Fraud Count has been filed as:

a)  Plaintiff did not discover the fraudulent criminal acts of Defendant First's Affidavit of Scrivener's Error until after February of 2019 in researching the Exhibits and laws,

b)  The deceptive acts committed by the Defendants were of an ongoing nature from 2008 to present, 13 years or more;

c)  Plaintiff is the last one to discover the fraud, as the lack of a property's **legal** description is not a "Scrivener's Error", but is a violation of A.R.S. §33-802(A), consisting of a bad loan that was bankrupted, **(Ex. A)**, judicially noticed, Rules of Evidence;

65. As a direct and proximate result of the wrongful misrepresentations, criminal acts, fraud and concealment by the Defendants acting in concert, Plaintiff suffered actual damages as follows:

- Current value of property: >greater than: $301,740.80
- Approximate interest,              $  18,000.00
- Taxes paid for property,           $  22,468.72
- Interest on taxes paid,            $   1,000.00
- Investigation, costs,              $   3,500.00
- Attorney's fees (approx.)          $  25,000.00
- Repairs (approx.)                  $  35,000.00
- Costs of care takers 35 Mo. X $500 $  17,500.00
- Total                              $424,208.80;

66. All of the Defendant's actions were malicious and done willfully in concert with each of the other Defendants and with a conscious disregard of the rights of Plaintiff in that the actions were calculated in a plan to injure and damage Plaintiff and steal his property through fraud, under color of law. As such, Plaintiff is entitled to recover, in addition to actual damages, costs and fees, punitive damages of three times actual damages to punish each of the Defendants and to deter them from engaging in future misconduct and for the Court to consider Defendant BofA's award of $45 Billion, with access to $700 Billion TARP Funds and second full payment from Defendant First;

## SECOND CAUSE OF ACTION - SLANDER OF TITLE AND DECEIT VIOLATION OF A.R.S. §33–420 and A.R.S. §33–421(C)

67.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs and one through 66 as though fully alleged and set forth herein;

68.     Plaintiff complains of fraudulent recording pursuant to A.R.S. §33-420(a) and violations of A.R.S. §33-421(C) and incorporates by reference all preceding paragraphs as though fully set forth herein and states as follows:

69.     As a direct approximate result of Defendant's wrongful misconduct publishing and illegally recording of the "Affidavit of Scrivener's Error" document, **[EX. E],** [which identified and admitted the Deed of Trust violated A.R.S. §33-802(A), in Paragraph 4, by the Title/ Mortgage Insurance agent from Defendant First, (Jeff Murdock), where Defendant First's agent failed to obtain the Debtor's required notarized signature authorizing and approving the filing to modify the invalid contract, in violation of A.R.S. §33-420, and as a result of Defendant First's agent illegally recording the document while knowing it was in violation of A.R.S. §33-421(C) after Defendant First's Title/ Mortgage Insurance paid-off the **bad loan** on the property to Defendant BofA]; the title to the Plaintiff's property was slandered and Plaintiff was deprived from receiving a clear or clean Title, release and satisfaction of Lien on the property and was egregiously harmed by Defendant's disregard for the Laws of Arizona, represented as slander of title, when Defendant Harper sold the property knowing the premise **(Ex. E)** was criminally filed and recorded illegally;

70.     Defendant First, Defendant BofA and Defendant Harper knew that because Debtor was successful in extinguishing the unsecured loan in bankruptcy and that Recon Trust canceled its Trustee Sale and abandoned the property to the Owner at the address (Debtor), **(Ex. C)** and knew the Defendants had no interest in the property they would have to violate bankruptcy laws (U.S. Bankruptcy Code Section, 11 U.S. Code §524(a)(2), where the automatic stay became permanent) and pretend there was a ("Hoax") lien on the property by recording a modification of the contract, without the required authorizing notarized signature of the Debtor, call it an "Affidavit of Scrivener's Error" **(Ex. E)** and knew Defendant BofA's secret Loan Comments stated both documents were invalid, **(Ex. G)** and that it would require several years before exercising their evil plan (8 years or more) to slander the title and commit felony home theft of Plaintiff's property under color of law, **(Ex. "I")**;

Defendants did so act and did unlawfully sell Plaintiff's property by slandering the title;

Plaintiff had a right to believe Defendants would not violate the law(s) and would act in an honest, honorable manner to his detriment; Defendants profited by their criminal acts;

71.     That between January 1, 2012 and the present Defendant First's agent from California (Jeff Murdock) caused a false document to be secretly and illegally recorded with the Maricopa County Recorder's Office two years after the Debtor's bankruptcy in 2010, (a Class 1 Misdemeanor) by misrepresenting the Deed of Trust (an unsecured fatally flawed document from 2006, **[EX. H],** (Six "6" Years later) to thwart, confuse and obfuscate the legal system.  The agent knew that if he enlisted the assistance and credibility of a municipal official to record the insufficient document, the employees at the Maricopa County Recorder's Office would be bamboozled and might not scrutinize and hopefully, overlook the insufficiencies in the original document.  The fraudulent and illegal course of conduct was successful, while the California agent remains beyond the jurisdiction of Arizona, and Arizona's Attorney General refuses to prosecute evolving felony home thefts;

72.     This fraud and slander of title is one of omission.  Defendant BofA and Defendant First could never obtain the notarized signature of the Debtor authorizing and agreeing to the retro modification of the faulty Deed of Trust in violation of A.R.S. §33-420 and was criminally filed in violation of A.R.S. §33-421(C) and Defendant BoA omitted filing (and refused to file) a "full release and satisfaction of Lien on the property" after being fully paid for the **bad loan** (twice);

73.     Plaintiff had the right to rely on the good faith of the Defendants (who acted wrongfully in concert) and did so rely to his detriment;

74.     As a direct and proximate result of the wrongful misrepresentations, criminal acts, concealment and deceit by the Defendants acting in concert, Plaintiff suffered actual damages as follows:

- Current value of property: >greater than: $301,740.80
- Approximate interest,                          $  18,000.00
- Taxes paid for property,                      $  22,468.72
- Interest on taxes paid,                        $   1,000.00
- Investigation, costs,                            $   3,500.00
- Attorney's fees (approx.)                     $  25,000.00
- Repairs (approx.)                                $  35,000.00
- Costs of care takers 35 Mo. X $500       $  17,500.00
- Total                                                 $424,208.80;

75.     All of the Defendant's actions were malicious and done willfully in concert with each of the other Defendants and with a conscious disregard of the rights of Plaintiff in that the actions were calculated in a plan to injure and damage Plaintiff and steal his property through fraud, under color of law. As such, Plaintiff is entitled to recover, in addition to actual damages, costs and fees, punitive damages of three times actual damages to punish each of the Defendants and to deter them from engaging in future misconduct and for the Court to consider Defendant BofA's award of $45 Billion, with access to $700 Billion TARP Funds and second full payment from Defendant First;

### THIRD CAUSE OF ACTION - UNJUST ENRICHMENT

76.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs and one through 75 as though fully alleged and set forth herein;

77.     Defendant BofA had a legally recognized contractual duty to provide a "full release and satisfaction of Lien on the property" after being paid-off with TARP's $45 Billion bailout of its bad Loan ($238,786.00) or after the second full pay-off from Defendant First's Title/ Mortgage Insurance (a second sum of $238,786.00, a depressed value at the time of Bankruptcy);

78.     Defendant BofA and other Defendants have been unjustly enriched by not having to pay real estate property taxes on the property, not having to incur the cost of insurance for legal liability arising out of ownership of the property, not having to exterminate killer bees twice, not having to pay for repairs caused by homeless trespassers, maintenance or up-keep for six (6) years, after abandoning the property;

79.     But for the misleading, deceptive and unfair conduct along with the criminal filing by Defendant First and other Defendants' criminal wrongdoing(s), abandoning the property as stated in Paragraphs 25, 26, 27 and 31 above, along with the legal advice from the Real Estate Lawyer, (Arthur Allsworth) the Plaintiff never would have purchased the property from Debtor for its depressed value of $95,000.00 in the first place;

80.     Defendant BofA and Defendant Harper's theft of the subject property, along with the wrongdoing(s) by the other Defendants resulted in unjust enrichment at the expense of Plaintiff. Plaintiff is therefore entitled to equitable restitution and disgorgement of profits obtained by each of the Defendants;

81.     As a direct and proximate result of the wrongful misrepresentations, criminal acts and concealment by the Defendants acting in concert, Plaintiff suffered actual damages as follows:

- Current value of property: >greater than: $301,740.80
- Approximate interest,                         $  18,000.00
- Taxes paid for property,                      $  22,468.72
- Interest on taxes paid,                       $    1,000.00
- Investigation, costs,                         $    3,500.00
- Attorney's fees (approx.)                     $  25,000.00
- Repairs (approx.)                             $  35,000.00
- Costs of care takers 35 Mo. X $500            $  17,500.00
- Total                                         $424,208.80;

82.     All of the Defendant's actions were malicious and done willfully in concert with each of the other Defendants and with a conscious disregard of the rights of Plaintiff in that the actions were calculated in a plan to injure and damage Plaintiff and steal his property through fraud, under color of law. As such, Plaintiff is entitled to recover, in addition to actual damages, costs and fees, punitive damages of three times actual damages to punish each of the Defendants and to deter them from engaging in future misconduct and for the Court to consider Defendant BofA's award of $45 Billion, with access to $700 Billion TARP Funds and second full payment from Defendant First;

## FOURTH CAUSE OF ACTION - QUITE TITLE A.R.S. §12–1101

83.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs and one through 82 as though fully alleged and set forth herein;

84.     Defendant BofA and other Defendants, acting in concert, falsely claimed an interest in the subject property adverse to Plaintiff's in that Recon Trust Company, N.A. voluntarily recorded a "Cancelation of Notice of Sale Arizona," at MCRO 20130055578, dated 2013-01-17, **[EX. C]**, as required by the Bankruptcy Court's automatic stay becoming permanent and penalties for failure, while Defendant Harper as trustee for U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust, by Caliber Home Loans, Inc., acting in concert with Defendant BofA and other Defendants asserted that it is the owner of the property, based upon the criminally filed "Affidavit of Scrivener's Error" document, **[EX. E],** [which identified and admitted the Deed of Trust

violated A.R.S. §33-802(A), in Paragraph 4, then asserting the false claim over Six (6) years later, which property was previously abandoned as stated in Paragraphs 25, 26, 27 and 31 above;

85.     The false claim by Defendant Harper is without any right whatsoever and Defendant Harper and her group of co-conspirator trustees, (Defendant U.S., Defendant LSF9, by Caliber Home Loans, Inc.) along with the other Defendants, acting in concert with each other had no legal interest or other interest in or to the property, or to any part of the property, as Defendant BofA was paid in full, twice, for the Property before Defendants abandoned the property and before Debtor bankrupted the unsecured loan of $238,786.00;

86.     Arguendo: Title/ Mortgage Insurance from Defendant First had paid the full amount of the Loan on the property, ($238,786.00) to Defendant BofA and then Defendant First attempted to recoup its insured "losses" by illegally and unilaterally modifying the contract retroactively by use of an out-of-state agent (Jeff Murdock) to illegally file the "Affidavit of Scrivener's Error" document, **[EX. E],** knowing it was in violation of A.R.S. §33-421(C), (a Class 1 Misdemeanor) with scienter; while Defendant First's agent failed to obtain Debtor's notarized, authorizing signature in agreement in violation of A.R.S. §33-420, in hopes MCRO officers would not scrutinize the deliberate deceit and cover-up; however, the document identified Defendant BofA knew the Deed of Trust violated A.R.S. §33-802(A), (Paragraph 4 of **Ex. E**) exposing the evil plan, several or all of the conspirators and through its execution, **[Ex. "I"]**;

87.     Plaintiff requests a judgment, decree, Order, (or other legally binding judgment) to be entered which permanently enjoins Defendants from asserting any adverse claim to Plaintiff's clear title to the property and a "full release and satisfaction of Lien on the property" (unless Defendants actually purchase the property from Plaintiff at its current value). Plaintiff applies and requests this court quiet the title in favor of Plaintiff, A.R.S. §12–1101, and award Plaintiff's costs and expenses of this action, plus reasonable attorney fees, the statutory fine(s) and such other relief as the court may deem proper or as a matter of Law and Rule of Law, judicially noticed;

88.     Notice pursuant to A.R.S, §12–1103B requesting Defendant Harper to stop the foreclosure and return the property with a satisfaction was served on Defendant Harper on December 12, 2018;

## FIFTH CAUSE OF ACTION - DECLARATORY JUDGMENT

89.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs and one through 88 as though fully alleged and set forth herein;

90.     An actual controversy has arisen and now exists between Defendant(s) and Plaintiff and offended Plaintiff's rights to peaceful enjoyment of his ownership, although couched in a Notice of Trustee's Sale to the Debtor, (who has no legal interests in the subject property) Defendant Harper's and the other Defendants' wrongful and illegal acts in concert executed their sinister plan by selling Plaintiff's property through an obtuse abuse of process concerning the respective rights of Plaintiff over the Property, (Hopefully, the Court will have patience and take care to understand Plaintiff, who is a hearing disabled elderly Veteran);

91.     Plaintiff requests a judicial determination of the rights, obligations and interests of the parties with regard to the property and such determination is necessary and appropriate at

this time under the circumstances so that all parties my ascertain and know what their interest is with regard to the property;

92.     Plaintiff requests an explanation as to why Defendant MCRO should be allowed to maintain a criminally filed invalid "Affidavit of Scrivener's Error" document, **[EX. E],** on the public record as a true document, with no consequences to the perpetrator(s) of the crimes;

93.     Plaintiff requests a determination of the invalidity of the Deed of Trust, **[EX. H]** and the invalidity of the "Affidavit of Scrivener's Error" document, **[EX. E],** in relationship to the Court's enforcement of A.R.S. §33-420;  A.R.S. §33-421(C);  A.R.S. §33-802(A);  A.R.S. §33-803;  A.R.S. §12–1101;  A.R.S. §12–1103(B);  and A.R.S. §33-803 (A) (4), concerning standing, pay-offs by TARP and Title Insurance, Quieting Title in favor of Plaintiff, as Defendant BofA agrees with Plaintiff that the two documents are invalid;

94.     Adjudicate that Plaintiff is entitled to exclusive possession of the property or in the alternative enter an Order that Defendants fully compensate Plaintiff for his care, taxes paid, repairs, care takers, extermination of killer bees, (twice), lawn and tree maintenance, improvements of the Property for six (6) years and for full value for loss of said property;

95.     Issue and enter an Order clearing title in favor of Plaintiff;

96.     Issue and enter an Order granting compensatory damages, Actual Damages along with appropriate punitive damages, costs and attorney fees incurred by Plaintiff to Plaintiff;

## VI.     ADDITIONAL REQUEST FOR RELIEF FOR ALL COUNTS

97.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs and one through 96 above, as though fully alleged and set forth herein;

98.     Petitioner requests that this matter be expedited to issue an entry of an Order nullifying the Trustee Sale and transfer of Plaintiff's property, preserving the status quo;

99.     Any and all other relief, which this Court deems just, and equitable including but not limited to:

a).     Immediate stay/ injunction preventing any other action(s) by Defendants preserving the status quo;

b).     For the causes stated above, it is requested the Court take judicial notice of all the facts and evidence, Rules of Evidence, Rule 301, et. seq., observing the Rule of Law and enforcing the penalties for violations of Laws;

c).     Finding and Reaffirming the Bankruptcy Court Order Discharging Debtor Garrett Sims, dated 06/24/2010, **[EX. A],**  is *res judicata*, un-opposed, as stated in the Trustee's Report of No Objection, **[EX. B],** granted subject property to Debtor, **[EX. D],** discharged the unsecured debt of $238,786.00, even though Defendant BofA failed and refused to provide full disclosure;

d).     Finding that Recon Trust Company, abandoned the property by Cancelation of Notice of Sale 2013-01-17, (approximately EIGHT Years ago) **[EX. C]**,;

e).     Finding Defendants were compensated in full by TARP for a **bad loan** and/ or were unjustly rewarded or enriched a second time in full by Title/ Mortgage Insurance or otherwise;

f).     Finding Defendant BofA (Bank of America or its assigns or successors in interest) had no valid beneficial interest, no valid security interest, no valid Lien or other interest to transfer or to assign to another entity;

g).     Granting declaratory judgment, with specific findings of fact, conclusions of law and an appropriate judgment based thereon, pursuant to Rule 52(A);

h).     Granting compensation to Plaintiff for current Actual damages in the reasonable amount of at least $301,740.80 or a larger amount, as determined by the Court's discretion;

i)     Granting reasonable other specific damages/ severe sanctions in an amount of up to, but not exceeding three times compensatory damages or an amount to be determined by the court;

j)     Granting attorney's fees, costs and expenses in an amount to be determined after trial to include other costs, taxes, fees and interests incurred;

k)     Enter an Order or other enforceable instrument Ordering Defendants to cease and desist from continuing any further acts preventing any new continuing successors from continuing their unlawful acts or by injunction into the future;

l)     Enter an Order reaffirming that the subject property belonged to Debtor free and clear at the time of the Discharge of Debtor and subsequent transfer of the property to Plaintiff;

m).     Enter an Order or instrument to be recorded providing for "full release and satisfaction of Lien on the property";

n)     Enter an Order compelling Defendant MCRO to remove or declare void the criminally filed "Affidavit of Scrivener's Error" ab initio from the date of filing in a recorded document and to do what is right to hold the perpetrators of the fraud responsible sufficiently to prevent Defendant First and others from repeating criminal acts in the future;

o)     Granting any other or further relief this Court deems necessary under the circumstances;


Further Affiant, says not.

RESPECTFULLY SUBMITTED THIS 20th day of December, 2021

_Bob L Hanks_

Bob L. Hanks, property owner

## VERIFICATION

STATE OF ARIZONA )
                  )ss:
County of Maricopa )

I, Bob L. Hanks, state the information in this Complaint by Affidavit above is true and correct, and any statements obtained based on information otherwise is believed to be true and correct.

_Bob L Hanks_

Bob L. Hanks
c/o 1509 West Pepper Place
Mesa, Arizona 85201-7011

Signed this 20th day of December, 2021

I, MARY CHRIST ____, a notary public, identified the identity of Bob L. Hanks, to my satisfaction, who signed this document before me this day.

_Mary Christ_

Notary Public

03/14/2025

My commission expires on:

MARY CHRIST
Notary Public - State of Arizona
MARICOPA COUNTY
Commission # 601097
Expires March 14, 2025

22

## SERVICE BY CERTIFIED MAIL

Defendants are being served by certified mail, Return Receipt Requested this day at:

Maricopa County Recorder's Office
represented by
Maricopa County Attorney's Office
225 West Madison Street
Phoenix, Arizona 85003

Article No.  7021  1970  0001  7418  3256

Christina Harper
2999 N. 44th Street Suite 625
Phoenix, AZ 85018

Article No.  7021  1970  0001  7418  3263

U.S. Bank Trust, N.A
300 East Delaware Avenue, 8th Floor
Wilmington, DE 19809;

Article No.  7021  1970  0001  7418  3270

LSF9 Master Participation Trust,
by Caliber Home Loans, Inc.
P.O. Box 24610
Oklahoma City, OK 73124;

Article No.  7021  1970  0001  7418  3287

First American Financial Corporation dba
First American Title Insurance Company
1 First American Way
Santa Ana, California 92707

Article No.  7021  1970  0001  7418  3294

Bank of America Corporate Center
100 North Tryon Street
Charlotte, North Carolina 28255

Article No.  7021  1970  0001  7418  3300

_By signature_

**Exhibit List:**

---

A.  Discharge of Debtor Order, dated 06/24/2010;

B.  "Trustee's Report of No Objection" which was filed on 04/27/11, Doc 62.;

C.  Recon Trust Company, N.A. voluntarily recorded a "Cancelation of Notice of Sale Arizona," MCRO Number 20130055578 Dated 2013-01-17

D.  "Trustee's Final Report," dated 03/29/11, Doc 57, 9 Pages;

E.  Affidavit of Scrivener's Error (MCRO No. 2012-0033640), dated 1/17/2012
    Admitting: **"4. … The legal description was omitted."** (invalidity of the Deed of Trust);

F.  Off-shore entity transactions through Frederiksted, Virgin Islands 00820:
    "Assignment of Deed of Trust," MCRO 20140357013, filed 06/02/2014
    "Corrective" Assignment of Deed of Trust, MCRO 20140477796, filed 07/22/2014

G.  Bank of America's "Loan Comments" discovered May, 2015, Bates Numbers CT01159, CT01160, CT01161 of 75 pages

H.  Deed of Trust, [recorded at (MCRO No. 2006-0921500), dated 06/07/2006], first 3 pages of 21 pages, (other pages are available at MCRO)

"I".  Trustee Deed, MCRO Number 2019-0155427, dated 03/06/2019    $301,740.80

B18 (Official Form 18) (12/07)

# United States Bankruptcy Court

## District of Arizona
### Case No. 2:10-bk-03123-RJH
### Chapter 7

*Ex A*
*2 pages*

In re Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, trade, and address):
    GARRETT D SIMS
    aka CARL R GREINER
    4607 W NORTHVIEW
    GLENDALE, AZ 85301

Social Security / Individual Taxpayer ID No.:
    xxx-xx-1711

Employer Tax ID / Other nos.:

## DISCHARGE OF DEBTOR

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED:**

The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

BY THE COURT

Dated: 6/24/10

Randolph J. Haines
United States Bankruptcy Judge

## SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.

I HEREBY CERTIFY THAT THE ANNEXED INSTRUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN THE OFFICE OF THE BANKRUPTCY CLERK.

DATE 8/31/11

AUTHORIZED DEPUTY CLERK

## EXPLANATION OF BANKRUPTCY DISCHARGE
## IN A CHAPTER 7 CASE

This court order grants a discharge to the person named as the debtor. It is not a dismissal of the case and it does not determine how much money, if any, the trustee will pay to creditors.

### Collection of Discharged Debts Prohibited

The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. *[In a case involving community property:* There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case. Also, a debtor may voluntarily pay any debt that has been discharged.

### Debts That are Discharged

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged. Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. (If this case was begun under a different chapter of the Bankruptcy Code and converted to chapter 7, the discharge applies to debts owed when the bankruptcy case was converted.)

### Debts That are Not Discharged

Some of the common types of debts which are not discharged in a chapter 7 bankruptcy case are:

a. Debts for most taxes;

b. Debts incurred to pay nondischargeable taxes;

c. Debts that are domestic support obligations;

d. Debts for most student loans;

e. Debts for most fines, penalties, forfeitures, or criminal restitution obligations;

f. Debts for personal injuries or death caused by the debtor's operation of a motor vehicle, vessel, or aircraft while intoxicated;

g. Some debts which were not properly listed by the debtor;

h. Debts that the bankruptcy court specifically has decided or will decide in this bankruptcy case are not discharged;

i. Debts for which the debtor has given up the discharge protections by signing a reaffirmation agreement in compliance with the Bankruptcy Code requirements for reaffirmation of debts; and

j. Debts owed to certain pension, profit sharing, stock bonus, other retirement plans, or to the Thrift Savings Plan for federal employees for certain types of loans from these plans.

**This information is only a general summary of the bankruptcy discharge. There are exceptions to these general rules. Because the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case.**

Ex B
1 page

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| | ) | |
| **SIMS, GARRETT D.** | ) | Case No. __**10-03123 PHX RJH**__ |
| | ) | |
| | ) | TRUSTEE'S REPORT OF |
| Debtor(s) | ) | NO OBJECTION |
| | ) | |

1. I, Roger W. Brown, am the duly appointed Trustee in the above-referenced case.

2. On 04/01/11 The Clerk of the Bankruptcy Court caused copies of a summary of my final report and account and application for compensation and reimbursement of expenses to be mailed to the appropriate parties as required by FRBP 2002(f) and 2002(a)(7).

3. The last day for filing objections to the report and application for compensation and reimbursement of expenses was 04/21/2011 .

4. I have received no timely objections or responses to the report or application, and more than five days have expired since the last date for filing objections.

5. A form of order is lodged concurrently with this Report of No Objection. The trustee respectfully requests that the Court enter the order.

| April 27, 2011 | /s/ Roger W. Brown |
|---|---|
| DATE | Roger W. Brown, TRUSTEE |

**RECORDING REQUESTED BY:**
**RECONTRUST COMPANY, N.A.**
**2380 Performance Dr, TX2-984-04-07**
**Richardson, TX 75082**

**WHEN RECORDED MAIL TO:**
**Owner of Record**
**4607 WEST NORTHVIEW AVENUE**
**GLENDALE, AZ 85301**
**TS No. 11-0139038**
**Title Order No. 110552146AZGTI**
**APN No. 147-10-113-5**

*Ex C*
*1 page*

## CANCELLATION OF NOTICE OF SALE ARIZONA

The undersigned trustee hereby cancels the Notice of Sale Recorded on 05/08/2012, as Instrument Number 20120390799, on trust property legally described as:

LOT 112, OF PALM LANE VILLAGE, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, IN BOOK 142 OF MAPS, PAGE 22.

which Notice of Sale refers to a trust deed executed by CARL R. GREINER, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY, as trustor, in which MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., is named as beneficiary, and THE TALON GROUP, is named as trustee, and Recorded on 07/10/2006, as Instrument Number 20060921500, Book N/A, Page N/A, of official records of Maricopa County; Arizona.

DATED: January 16, 2013

RECONTRUST COMPANY, N.A.,
Successor Trustee

_Lashunda Scott_ 1/16/2013
**AVP**
Lashunda Scott

State of: _____**Texas**_____ )
County of: _____**Tarrant**_____ )

On **JAN 1 6 2013** before me _____**Kanetta Denise Edwards**_____, personally appeared _____**Lashunda Scott** **AVP**_____, know to me (or proved to me on the oath of _____ or through _____ ) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Witness my hand and official seal.

**KANETTA DENISE EDWARDS**
**Notary Public**
**State of Texas**
**My Comm. Expires 4-19-2014**

_____
Notary Public's Signature

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

In re: SIMS, GARRETT D                        § Case No. 2:10-03123-RJH
                                              §
       GREINER, CARL R                        §
Debtor(s)                                     §

## TRUSTEE'S FINAL REPORT (TFR)

The undersigned trustee hereby makes this Final Report and states as follows:

1. A petition under Chapter 7 of the United States Bankruptcy Code was filed on February 08, 2010. The undersigned trustee was appointed on February 08, 2010.

2. The trustee faithfully and properly fulfilled the duties enumerated in 11 U.S.C. §704.

3. All scheduled and known assets of the estate have been reduced to cash, released to the debtor as exempt property pursuant to 11 U.S.C. § 522, or have been or will be abandoned pursuant to 11 U.S.C. § 554. An individual estate property record and report showing the disposition of all property of the estate is attached as **Exhibit A.**

4. The trustee realized the gross receipts of        $            4,932.11

   Funds were disbursed in the following amounts:

|  |  |
|---|---|
| Payments made under an interim distribution | 0.00 |
| Administrative expenses | 0.00 |
| Other payments to creditors | 0.00 |
| Non-estate funds paid to 3rd Parties | 0.00 |
| Exemptions paid to the debtor | 0.00 |
| Other payments to the debtor | 0.00 |
| Leaving a balance on hand of [1]   $ | 4,932.11 |

The remaining funds are available for distribution.

5. Attached as **Exhibit B** is a cash receipts and disbursements record for each estate bank account.

[1] The balance of funds on hand in the estate may continue to earn interest until disbursed. The interest earned prior to disbursement will be distributed pro rata to creditors within each priority category. The trustee may receive additional compensation not to exceed the maximum compensation set forth under 11 U.S.C. § 326(a) on account of the disbursement of the additional interest.

**UST Form 101-7-TFR (10/1/2010)**

6. The deadline for filing non-governmental claims in this case was 12/01/2010 and the deadline for filing governmental claims was 12/01/2010. All claims of each class which will receive a distribution have been examined and any objections to the allowance of claims have been resolved. If applicable, a claims analysis, explaining why payment on any claim is not being made, is attached as **Exhibit C**.

7. The Trustee's proposed distribution is attached as **Exhibit D**.

8. Pursuant to 11 U.S.C. § 326(a), the maximum compensation allowable to the trustee is $1,233.03. To the extent that additional interest is earned before case closing, the maximum compensation may increase.

The trustee has received $0.00 as interim compensation and now requests the sum of $1,233.03, for a total compensation of $1,233.03. [2] In addition, the trustee received reimbursement for reasonable and necessary expenses in the amount of $0.00 and now requests reimbursement for expenses of $54.87, for total expenses of $54.87.[2]

Pursuant to Fed R Bank P 5009, I hereby certify, under penalty of perjury, that the foregoing report is true and correct.

Date: 01/27/2011         By:/s/Roger W. Brown
                                          Trustee

**STATEMENT:** This Uniform Form is associated with an open bankruptcy case, therefore, Paperwork Reduction Act exemption 5 C.F.R. §1320.4(a)(2) applies.

2 If the estate is administratively insolvent, the dollar amounts reflected in this paragraph may be higher than the amounts listed in the Trustee's Proposed Distribution (Exhibit D)

**UST Form 101-7-TFR (10/1/2010)**

# Form 1
## Individual Estate Property Record and Report
## Asset Cases

Case Number: 2:10-03123-RJH

Case Name: SIMS, GARRETT D

Period Ending: 01/27/11

Trustee: (240120) Roger W. Brown

Filed (f) or Converted (c): 02/08/10 (f)

§341(a) Meeting Date: 03/16/10

Claims Bar Date: 12/01/10

| Ref. # | 1 <br> Asset Description <br> (Scheduled And Unscheduled (u) Property) | 2 <br> Petition/ <br> Unscheduled <br> Values | 3 <br> Estimated Net Value <br> (Value Determined By Trustee, <br> Less Liens, Exemptions, <br> and Other Costs) | 4 <br> Property <br> Abandoned <br> OA=§554(a) <br> DA=§554(c) | 5 <br> Sale/Funds <br> Received by <br> the Estate | 6 <br> Asset Fully <br> Administered (FA)/ <br> Gross Value of <br> Remaining Assets |
|---|---|---|---|---|---|---|
| 1 | PERSONAL RESIDENCE | 85,000.00 | 0.00 | DA | 0.00 | FA |
| 2 | RENTAL PROPERTY | 50,000.00 | 0.00 | DA | 0.00 | FA |
| 3 | BANK ACCOUNTS | 150.00 | 0.00 | DA | 0.00 | FA |
| 4 | HOUSEHOLD GOODS & FURNISHINGS | 2,000.00 | 0.00 | DA | 0.00 | FA |
| 5 | WEARING APPAREL | 500.00 | 0.00 | DA | 0.00 | FA |
| 6 | WATCH/WEDDING RINGS | 1,020.00 | 0.00 | DA | 0.00 | FA |
| 7 | 401 (K) THROUGH SRP | Unknown | 0.00 | DA | 0.00 | FA |
| 8 | 2007 CHEVROLET AVALANCHE | 18,850.00 | 0.00 | DA | 0.00 | FA |
| 9 | 2005 MAZDA 3 | 6,020.00 | 1,020.00 | DA | 0.00 | FA |
| 10 | 2009 INCOME TAX REFUNDS (u) | 0.00 | 4,932.00 | | 4,932.00 | FA |
| 11 | INTEREST (u) | 0.00 | 0.00 | | 0.11 | FA |
| 11 | Assets Totals (Excluding unknown values) | $163,540.00 | $5,952.00 | | $4,932.11 | $0.00 |

**Major Activities Affecting Case Closing:**

OBJECTIONS TO CLAIMS HAVE BEEN FILED; FINAL WILL BE FILED IN JANUARY

Initial Projected Date Of Final Report (TFR): January 31, 2011

Current Projected Date Of Final Report (TFR): January 27, 2011 (Actual)

# Form 2
## Cash Receipts And Disbursements Record

| | |
|---|---|
| **Case Number:** 2:10-03123-RJH | **Trustee:** Roger W. Brown (240120) |
| **Case Name:** SIMS, GARRETT D | **Bank Name:** The Bank of New York Mellon |
| | **Account:** 9200-******89-65 - Money Market Account |
| **Taxpayer ID #:** **-***9720 | **Blanket Bond:** $80,699,577.00 (per case limit) |
| **Period Ending:** 01/27/11 | **Separate Bond:** N/A |

| 1 Trans. Date | 2 {Ref #} / Check # | 3 Paid To / Received From | 4 Description of Transaction | T-Code | 5 Receipts $ | 6 Disbursements $ | 7 Money Market Account Balance |
|---|---|---|---|---|---|---|---|
| 08/30/10 | {10} | GARRETT SIMS | 2009 TAX RFDS | 1224-000 | 4,932.00 | | 4,932.00 |
| 09/30/10 | {11} | The Bank of New York Mellon | Interest posting at 0.0100% | 1270-000 | 0.03 | | 4,932.03 |
| 10/29/10 | {11} | The Bank of New York Mellon | Interest posting at 0.0100% | 1270-000 | 0.04 | | 4,932.07 |
| 11/30/10 | {11} | The Bank of New York Mellon | Interest posting at 0.0100% | 1270-000 | 0.04 | | 4,932.11 |
| 12/07/10 | {11} | The Bank of New York Mellon | Current Interest Rate is 0.0000% | 1270-000 | 0.00 | | 4,932.11 |
| 12/07/10 | | To Account #9200******8966 | TRANSFER OF FUNDS FOR TFR | 9999-000 | | 4,932.11 | 0.00 |

|  | | | |
|---|---|---|---|
| **ACCOUNT TOTALS** | 4,932.11 | 4,932.11 | $0.00 |
| Less: Bank Transfers | 0.00 | 4,932.11 | |
| **Subtotal** | 4,932.11 | 0.00 | |
| Less: Payments to Debtors | | 0.00 | |
| **NET Receipts / Disbursements** | **$4,932.11** | **$0.00** | |

# Form 2

## Cash Receipts And Disbursements Record

| | |
|---|---|
| Case Number: | 2:10-03123-RJH |
| Case Name: | SIMS, GARRETT D |
| Taxpayer ID #: | **-***9720 |
| Period Ending: | 01/27/11 |

| | |
|---|---|
| Trustee: | Roger W. Brown (240120) |
| Bank Name: | The Bank of New York Mellon |
| Account: | 9200-******89-66 - Checking Account |
| Blanket Bond: | $80,699,577.00  (per case limit) |
| Separate Bond: | N/A |

| 1<br>Trans.<br>Date | 2<br>{Ref #} /<br>Check # | 3<br>Paid To / Received From | 4<br>Description of Transaction | T-Code | 5<br>Receipts<br>$ | 6<br>Disbursements<br>$ | 7<br>Checking<br>Account Balance |
|---|---|---|---|---|---|---|---|
| 12/07/10 | | From Account #9200******8965 | TRANSFER OF FUNDS FOR TFR | 9999-000 | 4,932.11 | | 4,932.11 |
| | | | ACCOUNT TOTALS | | 4,932.11 | 0.00 | $4,932.11 |
| | | | Less: Bank Transfers | | 4,932.11 | 0.00 | |
| | | | Subtotal | | 0.00 | 0.00 | |
| | | | Less: Payments to Debtors | | | 0.00 | |
| | | | NET Receipts / Disbursements | | $0.00 | $0.00 | |

| | Net<br>Receipts | Net<br>Disbursements | Account<br>Balances |
|---|---|---|---|
| TOTAL - ALL ACCOUNTS | | | |
| MMA # 9200-******89-65 | 4,932.11 | 0.00 | 0.00 |
| Checking # 9200-******89-66 | 0.00 | 0.00 | 4,932.11 |
| | $4,932.11 | $0.00 | $4,932.11 |

Case 2:10-bk-03123-RJH    Doc 57    Filed 03/29/11    Entered 03/29/11 23:25:37    Desc
Main Document    Page 5 of 9

Printed: 01/27/2011 04:11 PM    V.12.56

# Claims Proposed Distribution

## Case: 2:10-03123-RJH    SIMS, GARRETT D

Case Balance:    $4,932.11        Total Proposed Payment:    $4,932.11        Remaining Balance:        $0.00

| Claim # | Claimant Name | Type | Amount Filed | Amount Allowed | Paid to Date | Claim Balance | Proposed Payment | Remaining Funds |
|---|---|---|---|---|---|---|---|---|
| | Roger W. Brown <br> <2100-00  Trustee Compensation> | Admin Ch. 7 | 1,233.03 | 1,233.03 | 0.00 | 1,233.03 | 1,233.03 | 3,699.08 |
| | Roger W. Brown <br> <2200-00  Trustee Expenses> | Admin Ch. 7 | 54.87 | 54.87 | 0.00 | 54.87 | 54.87 | 3,644.21 |
| | LANE & NACH, P.C. <br> <3210-00  Attorney for Trustee Fees (Other Firm)> | Admin Ch. 7 | 4,006.50 | 4,006.50 | 0.00 | 4,006.50 | 3,606.32 | 37.89 |
| | LANE & NACH, P.C. <br> <3220-00  Attorney for Trustee Expenses (Other Firm)> | Admin Ch. 7 | 42.10 | 42.10 | 0.00 | 42.10 | 37.89 | 0.00 |
| 1 | SHERIDAN LARSON/MIKE SHERIDAN | Unsecured | 120,000.00 | 120,000.00 | 0.00 | 120,000.00 | 0.00 | 0.00 |
| 2 | CHEAPER WINDOW GLASS, INC. | Unsecured | 120,000.00 | 120,000.00 | 0.00 | 120,000.00 | 0.00 | 0.00 |
| 3 | GMAC | Unsecured | 13,825.10 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 4 | GMAC | Unsecured | 13,825.10 | 13,825.10 | 0.00 | 13,825.10 | 0.00 | 0.00 |
| 5 | CHASE BANK USA, N.A. | Unsecured | 6,202.13 | 6,202.13 | 0.00 | 6,202.13 | 0.00 | 0.00 |
| 6 | SPRINT NEXTEL CORPORATION | Unsecured | 100.36 | 100.36 | 0.00 | 100.36 | 0.00 | 0.00 |
| 7 | CREDIT FIRST, N.A. | Unsecured | 1,013.21 | 1,013.21 | 0.00 | 1,013.21 | 0.00 | 0.00 |
| 8 | FIA CARD SERVICES | Unsecured | 9,582.32 | 9,582.32 | 0.00 | 9,582.32 | 0.00 | 0.00 |
| | **Total for Case 10-03123 PHX :** | | **$289,884.72** | **$276,059.62** | **$0.00** | **$276,059.62** | **$4,932.11** | |

## CASE SUMMARY

| | Amount Filed | Amount Allowed | Paid to Date | Proposed Payment | % paid |
|---|---|---|---|---|---|
| Total Administrative Claims : | $5,336.50 | $5,336.50 | $0.00 | $4,932.11 | 92.422187% |
| Total Unsecured Claims : | $284,548.22 | $270,723.12 | $0.00 | $0.00 | 0.000000% |

# TRUSTEE'S PROPOSED DISTRIBUTION

Case No.: 2:10-03123-RJH
Case Name: SIMS, GARRETT D
Trustee Name: Roger W. Brown

**Balance on hand:**                           $        4,932.11

Claims of secured creditors will be paid as follows:

| Claim No. | Claimant | Claim Asserted | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|-----------|----------|----------------|-------------------------|--------------------------|------------------|
| None |

Total to be paid to secured creditors:      $        0.00
Remaining balance:                          $        4,932.11

Applications for chapter 7 fees and administrative expenses have been filed as follows:

| Reason/Applicant | Total Requested | Interim Payments to Date | Proposed Payment |
|------------------|-----------------|--------------------------|------------------|
| Trustee, Fees - Roger W. Brown | 1,233.03 | 0.00 | 1,233.03 |
| Trustee, Expenses - Roger W. Brown | 54.87 | 0.00 | 54.87 |
| Attorney for Trustee, Fees - LANE & NACH, P.C. | 4,006.50 | 0.00 | 3,606.32 |
| Attorney for Trustee, Expenses - LANE & NACH, P.C. | 42.10 | 0.00 | 37.89 |

Total to be paid for chapter 7 administration expenses:   $        4,932.11
Remaining balance:                                        $        0.00

Applications for prior chapter fees and administrative expenses have been filed as follows:

| Reason/Applicant | Total Requested | Interim Payments to Date | Proposed Payment |
|------------------|-----------------|--------------------------|------------------|
| None |

Total to be paid for prior chapter administrative expenses:   $        0.00
Remaining balance:                                           $        0.00

In addition to the expenses of administration listed above as may be allowed by the Court, priority claims totaling $0.00 must be paid in advance of any dividend to general (unsecured) creditors.

Allowed priority claims are:

| Claim No | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|---|
| None | | | | |
| | | Total to be paid for priority claims: | $ | 0.00 |
| | | Remaining balance: | $ | 0.00 |

The actual distribution to wage claimants included above, if any, will be the proposed payment less applicable withholding taxes (which will be remitted to the appropriate taxing authorities).

Timely claims of general (unsecured) creditors totaling $ 270,723.12 have been allowed and will be paid *pro rata* only after all allowed administrative and priority claims have been paid in full. The timely allowed general (unsecured) dividend is anticipated to be 0.0 percent, plus interest (if applicable).

Timely allowed general (unsecured) claims are as follows:

| Claim No | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|---|
| 1 | SHERIDAN LARSON/MIKE SHERIDAN | 120,000.00 | 0.00 | 0.00 |
| 2 | CHEAPER WINDOW GLASS, INC. | 120,000.00 | 0.00 | 0.00 |
| 4 | GMAC | 13,825.10 | 0.00 | 0.00 |
| 5 | CHASE BANK USA, N.A. | 6,202.13 | 0.00 | 0.00 |
| 6 | SPRINT NEXTEL CORPORATION | 100.36 | 0.00 | 0.00 |
| 7 | CREDIT FIRST, N.A. | 1,013.21 | 0.00 | 0.00 |
| 8 | FIA CARD SERVICES | 9,582.32 | 0.00 | 0.00 |
| | | Total to be paid for timely general unsecured claims: | $ | 0.00 |
| | | Remaining balance: | $ | 0.00 |

Tardily filed claims of general (unsecured) creditors totaling $ 0.00 have been allowed and will be paid *pro rata* only after all allowed administrative, priority and timely filed general (unsecured) claims have been paid in full. The tardily filed claim dividend is anticipated to be 0.0 percent, plus interest (if applicable).

Tardily filed general (unsecured) claims are as follows:

| Claim No | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|---|
| None | | | | |
| | | Total to be paid for tardy general unsecured claims: | $ | 0.00 |
| | | Remaining balance: | $ | 0.00 |

UST Form 101-7-TFR (10/1/2010)

Subordinated unsecured claims for fines, penalties, forfeitures, or damages and claims ordered subordinated by the Court totaling $ 0.00 have been allowed and will be paid *pro rata* only after all allowed administrative, priority and general (unsecured) claims have been paid in full. The dividend for subordinated unsecured claims is anticipated to be 0.0 percent, plus interest (if applicable).

Subordinated unsecured claims for fines, penalties, forfeitures or damages and claims ordered subordinated by the Court are as follows:

| Claim No | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|----------|----------|------------------------|--------------------------|------------------|
| None |  |  |  |  |

Total to be paid for subordinated claims: $ _____ 0.00

Remaining balance: $ _____ 0.00

Unofficial

20 Document

DP:
Es

Ex E
3 pages

WHEN RECORDED MAIL TO:

2012 - 0033640

Jeff Murdock
SW Claims Department
First American Title Insurance Co.
2 First American Way
Santa Ana, CA 92707
Claim No. 1109019163

## AFFIDAVIT OF SCRIVENER'S ERROR

Jeff Murdock, being first duly sworn states upon his oath deposes and says:

1.  That he is in the Claims Services Department of First American Title
    Insurance Company (First American), a California Corporation and in that
    capacity is duly authorized to execute this Affidavit.

2.  On July 10, 2006, First American Title Insurance Company caused to be
    recorded in conjunction with its order 4686644-112, a Deed of Trust.

3.  Said Deed of Trust was recorded July 10, 2006, as instrument No.
    20060921500, records of Maricopa County, Arizona. The Trustors on said
    Deed of Trust is Carl R. Greiner, and the Beneficiary is Homecomings
    Financial Network, Inc.

4.  A scrivener's error exists in the following recorded legal description of the
    above referenced Deed of Trust:

    The legal description was omitted.

5.  Therefore, the correct legal description for the above referenced Deed of Trust
    is described as follows:

    LOT 112, OF PALM LANE VILLAGE, ACCORDING
    TO THE PLAT OF RECORD IN THE OFFICE OF THE
    COUNTY RECORDER OF MARICOPA COUNTY,
    ARIZONA, IN BOOK 142 OF MAPS, PAGE 22.

    APN# 147-10-113

Your Affiant further sayeth naught.

First American Title Insurance Company

By: Jeff Murdock
Senior Claims Specialist

Unofficial Document

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of California

County of _Orange_

On _Jan. 10th, 2012_ before me, _Rosa M. Magallon, Notary Public_,
(Here insert name and title of the officer)

personally appeared _Jeff Murdock_,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_(signature)_
Signature of Notary Public          Unofficial Document

(Notary Seal)

ROSA M. MAGALLON
Commission # 1956566
Notary Public - California
Orange County
My Comm. Expires Oct 15, 2015

---

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

(Title or description of attached document)

(Title or description of attached document continued)

Number of Pages _____ Document Date_____

(Additional information)

### CAPACITY CLAIMED BY THE SIGNER
- ☐ Individual (s)
- ☐ Corporate Officer

  (Title)
- ☐ Partner(s)
- ☐ Attorney-in-Fact
- ☐ Trustee(s)
- ☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM
*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is/are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ✎ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ✎ Indicate title or type of attached document, number of pages and date.
  - ✎ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary). •

Securely attach this document to the signed document

# Unofficial
## ²⁰Document

28
sa

*Ex F*

*1 of 2*

**20140357013**

**06/02/2014**

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

7915409S

## Assignment of Deed of Trust

Dated: **May 27, 2014**

Loan: 7130913937

For value received **Bank of America, N.A. successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP, by Indecomm Global Services its attorney in fact, 7105 Corporate Drive, Plano, TX 75024,** the undersigned hereby grants, assigns and transfers to **Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as Trustee of ARLP Trust 3, In c/o Altisource Asset Management Corporation, 402 Strand Street, Frederiksted, VI 00820,** all beneficial interest under a certain Deed of Trust dated **May 31, 2006** executed by **CARL R GREINER, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY** and recorded in Book **XX** on Page(s) **XX** as Document Number **20060921500** on July 10, 2006 of the official records of the County Recorder of Maricopa County, Arizona.

Bank of America, N.A. successor by merger to BAC Home
Loans Servicing, LP FKA Countrywide Home Loans
Servicing, LP, by Indecomm Global Services its attorney in
fact

By: _____

**Yu Yee Vang,**
**Assistant Secretary**

STATE OF **Minnesota**               )

COUNTY   **Ramsey**                     ) SS

*U04682089*

On **May 27, 2014** before me, **Bao Cindy Fang , Notary Public** in and for said State personally appeared
**Yu Yee Vang , Assistant Secretary of Bank of America, N.A. successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP, by Indecomm Global Services its attorney in fact,** personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

Prepared By:
Lisa Spurbeck
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117



**Bao Cindy Fang, Notary Public**
My Commission expires: **January 31, 2017**

BAO CINDY FANG
Notary Public-Minnesota
My Commission Expires Jan 31, 2017

Ex F
2 of 2

## 20140477796
## 07/22/2014

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

79433616
### *Corrective **Assignment of Deed of Trust**
Dated: **July 8, 2014**

Loan: 7130913937

For value received **Bank of America, N.A. successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP, by Indecomm Global Services its attorney in fact, 7105 Corporate Drive, Plano, TX 75024,** the undersigned hereby grants, assigns and transfers to **Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity but as Trustee of ARLP Trust 4, In c/o Altisource Asset Management Corporation, 402 Strand Street, Frederiksted, VI 00820,** all beneficial interest under a certain Deed of Trust dated **May 31, 2006** executed by **CARL R GREINER, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY** and recorded in Book **XX** on Page(s) **XX** as Document Number **20060921500** on July 10, 2006 of the official records of the County Recorder of Maricopa County, Arizona.

Bank of America, N.A. successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP, by Indecomm Global Services its attorney in fact

*To correct the assignee name on assignment dated 5/27/2014 and recorded on 6/2/2014 under Instr# 20140357013.

By: _____

**Bao Cindy Fang,**
**Vice President**

STATE OF **Minnesota**               )

COUNTY   **Ramsey**               ) SS

*U04775979*

On **July 8, 2014** before me, **Pang Mee Yang , Notary Public** in and for said State personally appeared **Bao Cindy Fang , Vice President of Indecomm Global Services its attorney in fact for Bank of America, N.A. successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP,** personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

Prepared By:
Lisa Spurbeck
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

Pang Mee Yang, Notary Public
My Commission expires: **January 31, 2017**

PANG MEE YANG
Notary Public-Minnesota
My Commission Expires Jan 31, 2017

# Bank of America Loan Comments

Carl R Greiner

4607 West Northview Avenue
Glendale, AZ 85301

| Owner Loan Number | Bank of America Acct | Comment Type | Section Number | Sequence Number | Comment |
|---|---|---|---|---|---|
| 7130913937 | 141546717 | FOR | 45 | 10 | on the corrective document. I am asking title if this can be fixed.LJ***2/1/1 |
| 7130913937 | 141546717 | FOR | 45 | 11 | 2: Sent email.LJ*** Status: Active Projected End: 2/7/2012 changed to 02/14/20 |
| 7130913937 | 141546717 | FOR | 45 | 12 | 12 |
| 7130913937 | 141546717 | FOR | 46 | 1 | .SECTION-00046                    FCLSERVACT |
| 7130913937 | 141546717 | FOR | 46 | 2 | .DT-02/14/2012, TM-13:10:36,LPSUSER |
| 7130913937 | 141546717 | FOR | 46 | 3 | LPS Desktop Comments Header: Header Info : 2/14/2012 1:21:36 PM CT: Laura L. J |
| 7130913937 | 141546717 | FOR | 46 | 4 | essee, BAC Issue History Edit/Save.,  Parent  Rail Description : FORECLOSURE, |
| 7130913937 | 141546717 | FOR | 46 | 5 | Rail Description : FC_AZ_PMI_BO_ |
| 7130913937 | 141546717 | FOR | 47 | 1 | .SECTION-00047                    FCLSERVACT |
| 7130913937 | 141546717 | FOR | 47 | 2 | .DT-02/14/2012, TM-13:10:37,LPSUSER |
| 7130913937 | 141546717 | FOR | 47 | 3 | LPS Desktop Comments : System updated for the following event: User has update |
| 7130913937 | 141546717 | FOR | 47 | 4 | d a Process-Level issue for this loan. Issue updated to: Issue Type: Legal Des |
| 7130913937 | 141546717 | FOR | 47 | 5 | cription Error. Issue Comments: Please verify the status of the re-recording o |
| 7130913937 | 141546717 | FOR | 47 | 6 | f the DOT.Although claim was accepted by LMG, the issue/hold needs to remain o |
| 7130913937 | 141546717 | FOR | 47 | 7 | pened until we have received the needed information. Thanks, Michelle.***1/23/ |
| 7130913937 | 141546717 | FOR | 47 | 8 | 12: Sent email to Araceli Santiago.LJ***1/31/12: Santiago, Araceli,A Scrivener |
| 7130913937 | 141546717 | FOR | 47 | 9 | s Error Affidavit was recorded to correct the error, however there is an error |
| 7130913937 | 141546717 | FOR | 47 | 10 | on the corrective document. I am asking title if this can be fixed.LJ***2/1/1 |
| 7130913937 | 141546717 | FOR | 47 | 11 | 2: Sent email.LJ*** Status: Active Projected End: 2/14/2012 changed to 02/21/2 |
| 7130913937 | 141546717 | FOR | 47 | 12 | 012 |

CT01159

| Current Loan Number | Bank of America Acct | Comment Type | Section Number | Sequence Number | Comment |
|---|---|---|---|---|---|
| 7130913937 | 141546717 | FOR | 48 | 1 | .SECTION- 48 DT-02/17/2012      /NBKSZC7  / |
| 7130913937 | 141546717 | FOR | 48 | 1 | << AutoDoc Roboto >>  Loan is eligible for Departm |
| 7130913937 | 141546717 | FOR | 48 | 2 | ent Of Justice Loan Modification Evaluation  Pleas |
| 7130913937 | 141546717 | FOR | 48 | 3 | e do not contact the operator of this NBK, this is |
| 7130913937 | 141546717 | FOR | 48 | 4 | an auto note << Auto Doc Roboto >> |
| 7130913937 | 141546717 | FOR | 48 | 5 | HMSAVR>>> Igor Yusim / Ext: 596-9999 |
| 7130913937 | 141546717 | FOR | 49 | 1 | .SECTION-00049                            FCLSERVACT |
| 7130913937 | 141546717 | FOR | 49 | 2 | .DT-02/17/2012, TM-16:08:45,LPSUSER |
| 7130913937 | 141546717 | FOR | 49 | 3 | LPS Desktop Comments Header: Header Info : 2/17/2012 5:10:20 PM CT: Laura L. J |
| 7130913937 | 141546717 | FOR | 49 | 4 | essee, BAC Issue History Edit/Save.,  Parent Rail Description : FORECLOSURE, |
| 7130913937 | 141546717 | FOR | 49 | 5 | Rail Description : FC_AZ_PMI_BO_ |
| 7130913937 | 141546717 | FOR | 50 | 1 | .SECTION-00050                            FCLSERVACT |
| 7130913937 | 141546717 | FOR | 50 | 2 | .DT-02/17/2012, TM-16:08:45,LPSUSER |
| 7130913937 | 141546717 | FOR | 50 | 3 | LPS Desktop Comments : System updated for the following event: User has update |
| 7130913937 | 141546717 | FOR | 50 | 4 | d a Process-Level issue for this loan. Issue updated to: Issue Type: Legal Des |
| 7130913937 | 141546717 | FOR | 50 | 5 | cription Error. Issue Comments: Please verify the status of the re-recording o |
| 7130913937 | 141546717 | FOR | 50 | 6 | f the DOT.Although claim was accepted by LMG, the issue/hold needs to remain o |
| 7130913937 | 141546717 | FOR | 50 | 7 | pened until we have received the needed information. Thanks, Michelle.***1/23/ |
| 7130913937 | 141546717 | FOR | 50 | 8 | 12: Sent email to Araceli Santiago.LJ***1/31/12: Santiago, Araceli,A Scrivener |
| 7130913937 | 141546717 | FOR | 50 | 9 | s Error Affidavit was recorded to correct the error, however there is an error |
| 7130913937 | 141546717 | FOR | 50 | 10 | on the corrective document. I am asking title if this can be fixed.LJ***2/1/1 |
| 7130913937 | 141546717 | FOR | 50 | 11 | 2: Sent email.LJ***2/17/12: Sent email.LJ*** Status: Active Projected End: 2/2 |
| 7130913937 | 141546717 | FOR | 50 | 12 | 1/2012 changed to 02/24/2012 Issue Comment: Please verify the status of the re |
| 7130913937 | 141546717 | FOR | 50 | 13 | -recording of the DOT.Although claim was accepted by LMG, the issue/hold needs |
| 7130913937 | 141546717 | FOR | 50 | 14 | to remain opened until we have received the needed information. Thanks, Miche |

Friday, October 12, 2012

CT01160

| Ocwen Loan Number | Bank of America # | Comment Type | Section Number | Sequence Number | Comments |
|---|---|---|---|---|---|
| 7130913937 | 141546717 | FOR | 50 | 15 | lle.***1/23/12: Sent email to Araceli Santiago.LJ***1/31/12: Santiago, Araceli |
| 7130913937 | 141546717 | FOR | 50 | 16 | ,A Scriveners Error Affidavit was recorded to correct the error, however there |
| 7130913937 | 141546717 | FOR | 50 | 17 | is an error on the corrective document. I am asking title if this can be fixe |
| 7130913937 | 141546717 | FOR | 50 | 18 | d.LJ***2/1/12: Sent email.LJ*** Changed to: Please verify the status of the re |
| 7130913937 | 141546717 | FOR | 50 | 19 | -recording of the DOT.Although claim was accepted by LMG, the issue/hold needs |
| 7130913937 | 141546717 | FOR | 50 | 20 | to remain opened until we have received the needed information. Thanks, Miche |
| 7130913937 | 141546717 | FOR | 50 | 21 | lle.***1/23/12: Sent email to Araceli Santiago.LJ***1/31/12: Santiago, Araceli |
| 7130913937 | 141546717 | FOR | 50 | 22 | ,A Scriveners Error Affidavit was recorded to correct the error, however there |
| 7130913937 | 141546717 | FOR | 50 | 23 | is an error on the corrective document. I am asking title if this can be fixe |
| 7130913937 | 141546717 | FOR | 50 | 24 | d.LJ***2/1/12: Sent email.LJ***2/17/12: Sent email.LJ*** |
| 7130913937 | 141546717 | FOR | 51 | 1 | .SECTION-00051                                    FCLSERVACT |
| 7130913937 | 141546717 | FOR | 51 | 2 | .DT-02/24/2012, TM-13:10:46,LPSUSER |
| 7130913937 | 141546717 | FOR | 51 | 3 | LPS Desktop Comments Header: Header Info : 2/24/2012 12:45:45 PM CT: Laura L. |
| 7130913937 | 141546717 | FOR | 51 | 4 | Jessee, BAC Issue History Edit/Save., Parent Rail Description : FORECLOSURE, |
| 7130913937 | 141546717 | FOR | 51 | 5 | Rail Description : FC_AZ_PMI_BO_ |
| 7130913937 | 141546717 | FOR | 52 | 1 | .SECTION-00052                                    FCLSERVACT |
| 7130913937 | 141546717 | FOR | 52 | 2 | .DT-02/24/2012, TM-13:10:46,LPSUSER |
| 7130913937 | 141546717 | FOR | 52 | 3 | LPS Desktop Comments : System updated for the following event: User has update |
| 7130913937 | 141546717 | FOR | 52 | 4 | d a Process-Level Issue for this loan. Issue updated to: Issue Type: Legal Des |
| 7130913937 | 141546717 | FOR | 52 | 5 | cription Error. Issue Comments: Please verify the status of the re-recording o |
| 7130913937 | 141546717 | FOR | 52 | 6 | f the DOT.Although claim was accepted by LMG, the issue/hold needs to remain o |
| 7130913937 | 141546717 | FOR | 52 | 7 | pened until we have received the needed information. Thanks, Michelle.***1/23/ |
| 7130913937 | 141546717 | FOR | 52 | 8 | 12: Sent email to Araceli Santiago.LJ***1/31/12: Santiago, Araceli,A Scrivener |
| 7130913937 | 141546717 | FOR | 52 | 9 | s Error Affidavit was recorded to correct the error, however there is an error |
| 7130913937 | 141546717 | FOR | 52 | 10 | on the corrective document. I am asking title if this can be fixed.LJ***2/1/1 |

CT01161

Return To:
HOMECOMINGS FINANCIAL NETWORK, INC
ONE MERIDIAN CROSSING, STE 100
MINNEAPOLIS, MN 55423
Loan Number: 042-901649-6

*Ex H*
*3 pages of 21*
*2006-0921500*

T4
Ja:

Prepared By:   HomeComings Financial Network
               4350 Von Karman Avenue, Suite 100
               Newport Beach, CA 92660

## The Talon Group

*444-4686644  112*

*JUN 0 7 2006*

————————————————[Space Above This Line For Recording Data]————————————————

# DEED OF TRUST

MIN 100062604290164963

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   MAY 31ST, 2006
together with all Riders to this document.
**(B) "Borrower"** is

CARL R. GREINER, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.  Borrower's mailing address is
4607 WEST NORTHVIEW AVENUE, GLENDALE, AZ 85301
**(C) "Lender"** is   HOMECOMINGS FINANCIAL NETWORK, INC.

Lender is a   CORPORATION
organized and existing under the laws of   DELAWARE

**ARIZONA**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS   Form 3003  1/01 (rev. 6/02)
MFAZ7770 (9/02) / 042-901649-6
VMP -6A(AZ) (0208)
Page 1 of 15                    Initials:
     VMP MORTGAGE FORMS - (800)521-7291

Lender's mailing address is 4350 VON KARMAN AVENUE, #100
NEWPORT BEACH, CA 92660
**(D) "Trustee"** is THE TALON GROUP

. Trustee's mailing address is
15601 WEST BELL ROAD #0206, SURPRISE , AZ 85374

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated MAY 31ST, 2006 .
The Note states that Borrower owes Lender TWO HUNDRED SIXTEEN THOUSAND AND NO/100
Dollars
(U.S. $ 216,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JULY 1ST, 2036 .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [x] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

Unofficial Document

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

MFAZ7770 (9/02) / 042-901649-6
-6A(AZ) (0208)
Page 2 of 15

Initials: _____

Form 3003 1/01 (rev. 6/02)

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                                     of  MARICOPA                                  :
     [Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]

Legal description attached hereto and made a part hereof

Unofficial Document

Parcel ID Number:  14710113                                   which currently has the address of
4607 WEST NORTHVIEW AVENUE                                                            [Street]
GLENDALE                                     [City], Arizona       85301    [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

MFAZ7770 (9/02) / 042-901649-6                                                Initials: _____
<img> -6A(AZ) (0206)                    Page 3 of 16                    Form 3003  1/01  (rev. 6/02)

WHEN RECORDED MAIL TO:
**Caliber Home Loans**
**16745 W. Bernardo Dr. Suite 300**
**San Diego, CA 92127**

15.
Yo.

Ex I

2 pages

2019·0155427

MAIL TAX STATEMENTS TO:
**Caliber Home Loans**
**16745 W. Bernardo Dr. Suite 300**
**San Diego, CA 92127**

Title No **180520787**                                    Space Above This Line For Recorder's Use
TS No. **143029**

# TRUSTEE'S DEED

Affidavit exempt pursuant to AR.S. § 11-1134(B)(1).

CHRISTINA HARPER, ("Trustee"), as the duly appointed Successor Trustee of the Deed of Trust hereinafter-described, does hereby grant and convey, but without covenant or warranty, express or implied, to:

### LSF9 Master Participation Trust

("Grantee"), the real property, situated in the County of **Maricopa**, State of Arizona described as follows:

> ### Lot 112, PALM LANE VILLAGE, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, IN BOOK 142 OF MAPS, PAGE 22
> ### APN# 147-10-113

TRUSTEE states that:

This conveyance is made pursuant to the powers, including the power of sale, conferred upon Trustee by the Deed of Trust, dated **05/31/2006** made by **Carl R. Greiner, a Married Man as His Sole and Separate Property** as Trustor to **Mortgage Electronic Registration Systems, Inc., as a nominee for Homecomings Financial Network, Inc.** as beneficiary and recorded on **07/10/2006** in the Office of the County Recorder of **Maricopa** County Arizona in Instrument Number **20060921500**, in Book xx, Page xx and Affidavit of Scrivener's Error recorded on 01/17/2012 in Instrument number 20120033640 and in compliance with the laws of the State of Arizona authorizing conveyance and is effective upon the payment by the purchaser of the bid in accordance with A.R.S. §§ 33-810 and 33-811.

# TRUSTEE'S DEED

Trustee Sale No. **143029**

Said property was sold by Trustee at public auction on **02/14/2019** at the place named in the Notice of Trustee's Sale, in the County of **Maricopa** in which said property is situated. Grantee, being the highest bidder at such sale, became the purchaser of said property and made payment therefore to said Trustee of the amount bid, namely **$301,740.80** which payment was made either entirely in cash or by the satisfaction, *pro tanto*, of the obligations then secured by said Deed of Trust, together with the fees and expenses relative thereto.

**DATE: March 6, 2019**

By:     **Christina Harper, Attorney at Law**
       **Successor Trustee**

STATE OF ARIZONA    )
                      ) ss
COUNTY OF MARICOPA  )

      On March 6, 2019 before me, Janette Belmontes, the undersigned, a Notary Public in and for said state, personally appeared Christina Harper, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

      I certify under penalty of perjury under the laws of the State of Arizona that the foregoing paragraph is true and correct.

      Witness my hand and official seal.

**JANETTE BELMONTES**
Notary Public - State of Arizona
MARICOPA COUNTY
My Commission Expires May 6, 2019

Notary Public
My Commission Expires: 5/6/2019